## Burk Estate

*Landis & Williams*, for accountant.

*J. Harry Wagner, Jr.*, for claimant.

TAXIS, P. J., June 8, 1965. . . . Mrs. Burk has . . . raised certain questions relating to her rights in the estate as surviving spouse. Decedent died on December 20, 1962, leaving a will dated December 18, 1948. He first authorized his executor to carry out any agreements made by him in connection with his common stock in the Richmond Ring Company, Inc., and then gave all of his estate in accordance with the intestate laws of Pennsylvania. On November 21, 1963, Elise H. Burk elected to take against the will of her husband, and also against all conveyances made by him or by his executor which were legally encompassed by such election. On September 4, 1964, Mrs. Burk filed exceptions to the inventory of the executor as well as objections to his account, alleging, in substance, that the valuation of $400 placed on decedent's four shares of the common stock of Richmond Ring Company, Inc., is improper and inadequate, and is based solely on an agreement between decedent and his son, resulting in a substantial prejudice to her marital rights.

On February 8, 1965, these exceptions and objections were superseded by amended objections to the first and final account. The allegation concerning the stock valuation was repeated, and objection was also taken to the failure of the executor to include in his administration the balance in account no. BX-7765 with the Philadelphia Saving Fund Society, which was held at decedent's death in the joint names of himself and Edwin H. Burk, Jr., and was subject to the latter's right of survivorship in the $5,466.46 balance. Amended objection no. 4 states the legal position of the widow thusly:

"4. The stock agreement executed by the decedent . . . and the joint account created by the decedent . . . in view of the election of the widow to take against the Will and conveyance of the decedent, are testamentary dispositions by the decedent so far as the rights of his widow are concerned".

The agreement referred to was made by decedent and his son on December 18, 1948, the same day on which decedent's will was executed. It recites that decedent owned four shares of the common stock of Richmond Ring Company, Inc., and that his son owned two shares, which together constituted all of such shares outstanding and all of the voting shares of the corporation. Then followed more or less conventional provisions of such buy-sell agreements, among which it is set forth that at the death of either party, ". . . the survivor shall have the right to purchase all of the shares of common stock owned by the deceased party at . . . $100 per share . . . ." There were additional requirements concerning notice and other matters, and Edwin H. Burk, Jr., complied with the same and purchased his father's four shares from the estate at $100 per share. No court approval, however, was sought or obtained for this transaction.

Additional facts have been stipulated. The marriage between Edwin H. Burk and Elise H. Burk was the

second for both. Edwin H. Burk, Jr., is decedent's son by his first marriage. Richmond Ring Company, Inc., was organized by decedent in 1934, and the four and two common stock ownership was established on December 18, 1948, shortly after a corporate reorganization. There were preferred shares outstanding at that time as well, which have since been redeemed. Exhibits attached to the stipulation reveal that in 1948 the net worth of the corporation by its balance sheet was somewhat less than $12,000; the same entry by 1962 had passed $74,000, while the valuation of assets at the same time for Pennsylvania capital stock purposes was about $66,000. For the years 1961 through 1963, Edwin H. Burk, Jr., received a salary of $9,100; in 1961, Edwin H. Burk, Sr., received $5,200, which was reduced to $5,000 in 1962, the year of his death.

Corporate earnings have ranged from a loss of $3,900 in 1947 to profits of more than $25,000 in 1957. Net income in 1962 was $19,158, but in 1963 only $1,074. At the hearing, it appeared clearly that Edwin H. Burk, Jr., has now become the principal manager and operator of the corporation. He entered the business, generally speaking, as his father moved toward a gradual retirement. He studied business law, metallurgy and machine design, and, although his father never formally retired, since about 1958 he has been responsible for the operation and success of the business.

Section 11 of the Estates Act of April 24, 1947, P. L. 100, as amended February 17, 1956, P. L. (1955) 1073, sec. 4, 20 PS §301.11, contains the following language:

"(a) In General. A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall, at the election of his surviving spouse, be treated

as a testamentary disposition so far as the surviving spouse is concerned . . . ."

This is urged by counsel for Mrs. Burk as the law which renders the agreement between decedent and his son a testamentary one. The history of this enactment shows that its purpose was to prevent the easy obliteration of the rights of a surviving spouse by transferring bare legal title to property prior to or at death. Cf. Rynier Estate, 347 Pa. 471 (1943). Here, however, legal title remained in decedent, and the stock is conceded to be an asset of his probate estate. No special enactment, therefore, is required to bring the stock liability within the wife's election. The real issue before me, however, is what such an election reaches; that is, whether the widow must be satisfied with her fractional share of the proceeds of this stock, in this case, one third, or whether she becomes the owner of that portion of the stock itself. Under the applicable law, I conclude the latter.

Section 11(b) of the Estates Act of 1947, as amended, supra, by its plain language, entitles Mrs. Burk to one third of the property conveyed. Likewise, under section 8(b) of the Wills Act of April 24, 1947, P. L. 89, as amended February 17, 1956, P. L. 1070 (1955), sec. 1, 20 PS §180.8, an electing spouse under present circumstances is ". . . entitled to one-third of the real and personal estate of the testator . . . ." It is apparent, therefore, that the interest of the spouse is not limited to money values, whatever they may be, and that she receives by her election a one-third interest in all property within its scope, subject only to charges and claims superior to her interest. This conclusion was also reached in Runyan Estate, 21 D. & C. 2d 180 (1960). Thus, Mrs. Burk by her election has become the owner of one and one-third shares of Richmond Ring Company, Inc.

This does not totally answer the present problem,

however, for it is next contended that Mrs. Burk owns the stock subject to a valid contractual duty to convey it to her stepson for $100 per share. To this, there are several answers. In the first place, she was not made a party to the agreement in question, though she was married to decedent at the time of its execution. Further, there is a long-established policy in Pennsylvania to protect the rights of widows in the estates of their husbands, and in case of doubt in matters relating thereto, they should be resolved in favor of the widow: Pengelly Estate, 374 Pa. 358 (1953).

Finally, and most important, the substance of the right given by decedent to his son to purchase these shares for $100 each is a gift to him of all of their value in excess of that amount as it existed at decedent's death. It is not necessary here to fix the precise value of these shares, except to note that, whether considered from the standpoint of asset value, net worth, earning power, or any other reasonable method of valuation, they are worth far more than $100 each. It is at this point that the real thrust of section 11 is felt. By maintenance of voting control in the corporation, decedent reserved to himself the right essentially to consume or dissipate the principal value of his holdings entirely, if he wished, before either son or wife became their owner. To characterize Edwin H. Burk, Jr., as a creditor under the terms of the agreement, therefore, is misleading from the standpoint of the widow's rights, since in this case the agreement in effect created a testamentary gift to him. The testimony reveals ample reason for this action on the part of decedent, but it should not be allowed to prejudice the paramount rights of the surviving spouse.

As to the savings account, the problem is simpler. Section 11 clearly applies to this transaction, inasmuch as the account, with right of survivorship in Edwin H. Burk, Jr., was created from funds originally belonging

534

entirely to decedent: Hershey Estate, 23 D. & C. 2d 523 (1960). It appears, however, that the interest reached by the election must be limited to one half of the balance in the account at decedent's death, as the Supreme Court has held that in such cases the contract creates ". . . the relationship of the joint tenants between the parties which, of itself, gave each an equal interest in the fund": Cochrane's Estate, 342 Pa. 108 (1941); Fuller v. Fuller, 372 Pa. 239 (1953). Mrs. Burk's election, therefore, encompasses one sixth of the said balance . . .

ORDER

And now, June 8, 1965, this adjudication is confirmed nisi.