Brown Estate.

402

Argued January 14, 1972. Before JONES, C. J.,
EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MAN-
DERINO, JJ.

*Russell E. Ellis,* with him *Anthony L. Differ,* and *Fox, Differ, Mazer & Callahan,* for appellant.

*Otis W. Erisman,* with him *Truscott and Erisman,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, March 20, 1972:

This is an appeal from a decree of the Montgomery County Common Pleas Court, Orphans' Court Division, which denied the claim of appellant Robert C. Brown for specific performance of a "buy-sell" agreement between himself and decedent Clayton L. Brown, Jr. The agreement provided that the survivor of the two would have the option to purchase all of the shares of the other in Clayton L. Brown, Inc., for $1.00 per share.

Two questions are presented for our decision. First, is the decree of the orphans' court division a "final order" within the meaning of Section 202 of the Appellate Court Jurisdiction Act of 1970[1] and thus a proper subject of our appellate jurisdiction under that section. And second, is appellant entitled to specific performance of his "buy-sell" agreement with decedent.

---

[1] Act of July 31, 1970, P. L. 673, No. 223, art. II, §202, 17 P.S. §211.202 (Supp. 1971).

We believe that the orphans' court's decree is such a "final order" and that appellant is entitled to specific performance of his "buy-sell" agreement. Accordingly, we vacate the decree of the orphans' court in so far as it denied appellant specific performance of the agreement, and remand for entry of an appropriate decree directing the executrix to transfer decedent's stock in Clayton L. Brown, Inc., to appellant in accordance with the agreement.

The facts which give rise to this appeal are as follows: Appellant and decedent were brothers. They worked together in the real estate and insurance businesses initially as employees of their father Clayton L. Brown, Sr. In 1960 the family business was incorporated as Clayton L. Brown, Inc., and decedent and appellant became stockholders with their father. In March of 1965 their father died, and the two brothers, pursuant to a shareholders' agreement then in effect, each exercised his option to acquire 69 shares of their father's stock at a price of $1.00 per share. With these acquisitions appellant and decedent became the sole shareholders of Clayton L. Brown, Inc., each holding 185 shares.

On September 25, 1965, appellant and decedent entered into a written contract whereby it was agreed that the survivor would have the option to purchase all of the shares of the other in Clayton L. Brown, Inc., at a price of $1.00 per share. The two brothers also agreed that in the event that either desired to sell his stock before his death, the other would have the right to purchase the shares for $1.00 per share. It was further agreed that a legend noting these restrictions would be affixed to the stock certificates. In his will executed in July of 1966, the decedent Clayton L. Brown, Jr., directed that in the event that the agreement of September 25, 1965, was found invalid, his

shares in Clayton L. Brown, Inc., should pass to appellant.

Decedent died March 26, 1968. His will, duly admitted to probate, named his wife Elizabeth W. Brown as executrix. In addition to the conditional bequest of shares to his brother described above, the only dispositive provision in decedent's will was a residuary clause devising the residue of his estate to his wife.

On March 13, 1968, decedent's wife filed her election to take against decedent's will. Since decedent died without issue, his wife by virtue of her election is entitled to one-half of decedent's real and personal estate according to Section 8 of the Wills Act,[2] and to one-half of all conveyances by decedent which fall within Section 11 of the Estates Act.[3]

On September 19, 1969, appellant filed his "Petition To Show Cause Why Executrix Should Not Turn Over Stock In Accord With Shareholders' Agreement." Shortly thereafter executrix filed her First and Partial Account. In November of 1970, the orphans' court held a hearing at which time evidence was presented relating both to the audit of the First and Partial Account and to appellant's petition.

The evidence presented at this hearing indicated that aside from the 185 shares of stock, decedent's estate consisted of only $262.50 in assets of ascertainable value and an unliquidated claim against Clayton L. Brown, Inc., which the executrix estimated was worth at most $7,500. On the other hand the estate owed a number of debts, largest of which was a debt of $15,-527.71 to the executrix. This debt arose as a result of money that the executrix had advanced to the es-

---

[2] Act of April 24, 1947, P. L. 89, §8, as amended, 20 P.S. §180.8 (Supp. 1971).

[3] Act of April 24, 1947, P. L. 100, §11, as amended, 20 P.S. §301.11 (Supp. 1971).

tate. These funds were employed to pay administration expenses, decedent's funeral and medical expenses, and numerous unpreferred claims against the estate among which was a $9,200 bank loan which was outstanding at decedent's death.

At the hearing, evidence was also offered in an attempt to determine the value of the shares in question. The expert produced by decedent's wife estimated the current fair market value of Clayton L. Brown, Inc., stock to be $222 per share. Appellant's expert fixed the corporate value at $76 per share.

The orphans' court adjudication of March 19, 1971, rejected appellant's claim for specific performance of the agreement and awarded the assets of the estate to the fiduciary for further accounting. This appeal followed. Executrix filed a motion to quash the appeal on the ground that the decree of the orphans' court was not appealable. This Court ordered that the motion to quash be heard at the time of argument on the merits.

## I.

Section 202 of the Appellate Court Jurisdiction Act of 1970 specifies that the "Supreme Court shall have exclusive jurisdiction of appeals from *final orders* of the courts of common pleas in . . . [m]atters decided in the orphans' court division . . . ."[4] Prior to the passage of this act this Court repeatedly held that "unless a special right to appeal is expressly given by statute, an appeal will lie only from a definitive order, decree, or judgment *which finally determines the action.*"[5] Such a standard—does the order finally deter-

---

[4] Act of July 31, 1970, P. L. 673, No. 223, art. II, §202, 17 P.S. §211.202 (Supp. 1971) (emphasis added).

[5] *Stadler v. Mt. Oliver Borough*, 373 Pa. 316, 317-18, 95 A. 2d 776 (1953) (opinion by Chief Justice HORACE STERN) (emphasis

mine the action—is still an appropriate test for determining the meaning of "final order" for the purposes of Section 202 of the Appellate Court Jurisdiction Act.

Appellant's petition in the orphans' court sought specific performance of his "buy-sell" agreement with decedent. The petition was based upon Section 620 of the Fiduciaries Act of 1949. That section provides: "If any person makes a legally binding agreement to purchase or sell real or personal estate and dies before its consummation, his personal representative shall have power to consummate it, but if he does not do so, the court, on the application of any party in interest . . ., may order specific performance of the agreement if it would have been enforced specifically had the decedent not died."[6]

A careful reading of the opinion of the orphans' court reveals that the court "finally determined" appellant's request for specific performance of his agreement with decedent. The court held that the agreement was "in substance" a "gift by the deceased to the survivor," and that "Elizabeth W. Brown, by virtue of her election, has become the owner of 92½ shares of Clayton L. Brown, Inc., subject only to any charges, debts, or claims superior to her distributive rights."[7] The court apparently regarded the remainder of the shares as an asset of the estate, "available for its creditors as their interests and preferences may appear." Thus the court

---

added) ; see, e.g., *Middleberg v. Middleberg*, 427 Pa. 114, 115, 233 A. 2d 889, 890 (1967) ; *Philadelphia v. William Penn Business Institute*, 423 Pa. 490, 492, 223 A. 2d 850, 851 (1966) ; *Weste v. Grayson-Robinson Stores, Inc.*, 417 Pa. 6, 7, 207 A. 2d 851, 852 (1965).

[6] Act of April 18, 1949, P. L. 512, art. VI, §620, 20 P.S. §320.620.

[7] In *Beeruk Estate*, 429 Pa. 415, 422, 241 A. 2d 755, 759 (1968), we held that the wife's elective share is to be determined after the deduction of the claims of decedent's creditors from his testamentary estate. See *Pratt Estate*, 422 Pa. 446, 449, 221 A. 2d 117, 119 (1966).

completely and finally denied appellant's right to specific performance of the "buy-sell" agreement.

Although the orphans' court did state in its adjudication that appellant's petition would not be dismissed, but would be held in abeyance so that it could be renewed at an appropriate time, this statement cannot be taken as a ruling by the court that appellant at some later date might obtain specific performance of all or part of the "buy-sell" agreement. The court's statement was merely an indication that under its view of the priority of the conflicting claims to the stock, appellant might be entitled to some portion of the shares if the estate was solvent *as a devisee under decedent's will,* and not by virtue of any right to specific performance of his "buy-sell" agreement.

Since the orphans' court thus "finally determined" that appellant was not entitled to the specific performance of the "buy-sell" agreement which he sought in his petition, it must be concluded that the court's decree was a "final order" within the meaning of Section 202 of the Appellate Court Jurisdiction Act and thus properly subject to our appellate review. Accordingly we must dismiss appellee's motion to quash the appeal.

## II.

Next we must decide whether appellant is entitled to specific performance of the "buy-sell" agreement.

First it should be noted that if there were no widow's election to be contended with, appellant would clearly be entitled to specific performance of the agreement. Each brother's promise to convey his shares to the survivor for $1.00 per share was supported by legally sufficient consideration—the other brother's prom-

ise to do likewise.[8] Each brother realized that the "buy-sell" agreement offered both the potentiality for gain and the possibility of loss depending upon what transpired in the future. The potential gains and possible losses created by this agreement were of the same sort that are implicit in all business contracts dependent on future events. In addition, it has long been the law of this Commonwealth that a nonpersonal contractual duty does not terminate with the death of the party who assumed the duty, but is binding upon his estate.[9] In fact, the "buy-sell" agreement between appellant and decedent was expressly made binding on each brother's "heirs, executors, administrators and assigns." Moreover, it is clear that specific performance is a particularly appropriate remedy for enforcement of "buy-sell" agreements for shares of stock of closely-held corporations. Money damages would not be an adequate remedy. It is extremely difficult to determine the value of stock in a closely-held corporation[10] and money damages would not accomplish the primary purpose of such "buy-sell" agreements—to prevent outsiders from entering the business.[11]

In addition to our case law, Section 620(a) of the Fiduciaries Act of 1949 clearly recognizes appellant's right to specific performance of the "buy-sell" agreement. As has been noted previously, that section pro-

---

[8] See *Thomas v. R. J. Reynolds Tobacco Co.*, 350 Pa. 262, 266, 38 A. 2d 61, 63 (1944) ; Restatement of Contracts §§75, 77; 1 Corbin on Contracts, §§142-43 (1963 ed.).

[9] See, e.g., *Unit Vending Corp. v. Lacas*, 410 Pa. 614, 617, 190 A. 2d 298, 300 (1963) ; *Stormer Estate*, 385 Pa. 382, 384-85, 123 A. 2d 627, 629 (1956) ; *Book's Estate*, 297 Pa. 543, 147 Atl. 608 (1929).

[10] See *Aldrich v. Geahry*, 367 Pa. 252, 80 A. 2d 59 (1951) ; Restatement of Contracts §§361(a).

[11] See Comment, Buy and Sell Agreements and the Widow's Rights, 114 U. Pa. L. Rev. 1006 (1966) ; Recent Developments, 9 Vill. L. Rev. 334, 336 (1964).

vides: "Specific Performance of Contracts—(a) Application to Court. If any person makes a legally binding agreement to purchase or sell real or personal estate and dies before its consummation, his personal representative shall have power to consummate it, but if he does not do so, the court, on the application of any party in interest . . ., may order specific performance of the agreement if it would have been enforced specifically had the decedent not died."[12]

The official comment of the commissioners who drafted this section notes: "As now written this subsection applies to personal as well as to real estate. *This may be important and prevent irreparable harm as where the decedent agreed to purchase or sell the controlling shares in a close corporation.*"[13] Thus it is clear that if appellant were claiming the shares not against an electing widow but only against persons claiming under the will or by intestacy, he would prevail.

Our next inquiry is whether the widow's elective rights override appellant's otherwise established right to specific performance of the agreement. A surviving spouse's elective rights are created by Section 8 of the Wills Act and by Section 11 of the Estates Act. The former provides that a surviving spouse upon election to take against her deceased spouse's will is entitled to a specified fraction (here one-half) of the "real and personal estate of the testator."[14] The latter provides that: "A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall at the election of his surviving spouse, be treated as a

---

[12] Act of April 18, 1949, P. L. 512, art. VI, §620, 20 P.S. §320.620.

[13] Commission's Comment at 20 P.S. §320.620.

[14] Act of April 24, 1947, P. L. 89, §8, as amended, 20 P.S. §180.8 (Supp. 1971).

testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved. . . ."[15]

As has been pointed out previously,[16] the orphans' court concluded that decedent's wife "by virtue of her election, has become the owner of 92½ shares of Clayton L. Brown, Inc., subject only to any charges, debts, or claims superior to her distributive rights." The orphans' court viewed this case as controlled by its previous decision in *Burk Estate*, 37 Pa. D. & C. 2d 528 (Orphans' Ct. Montgomery County 1965). However, it is not clear from the court's opinion in *Burk* or from its opinion in this case whether the court based its finding of the superiority of the widow's elective rights over appellant's contract rights on Section 8 of the Wills Act or on Section 11 of the Estates Act.[17] In any event, we do not believe that the rights of the electing spouse in this case can prevail over the contract rights of appellant under either Section 8 or Section 11.

Section 8 of the Wills Act gives an electing spouse a right to a specified share of the deceased spouse's "real and personal estate." Thus, in order to have any right to shares based upon Section 8, the spouse must establish that the shares themselves are properly includable in decedent's distributive estate. We see no indication in the words or history of Section 8 that the

---

[15] Act of April 24, 1947, P. L. 100, §11, as amended, 20 P.S. §301.11 (Supp. 1971).

[16] See text at footnote 7, supra.

[17] The court's characterization of the agreement here as a gift and its treatment of all 185 shares as an asset of the estate appears more consistent with a view that the superiority of the widow's elective rights arises from Section 8 of the Wills Act. However, in *Burk* the court refers to the agreement there involved as a conveyance and emphasizes the power of consumption, both Section 11 concepts. See Spouse's Election—Stock Subject to Buy-Sell Agreement, Fiduciary Review, September 1965, p. 3.

section, especially in cases such as this one where there is no suggestion that the agreement was specifically designed to defeat the spouse's marital rights, was intended to enable an electing spouse to include anything more in her deceased husband's estate for purposes of her election than would be includable in a decedent's estate in determining what property should pass under the provisions of his will or by intestacy.

Viewing Section 8 in this manner, it is clear that the shares cannot be considered as a part of decedent's estate for the purposes of the widow's election. As we already noted, appellant has a contract right which is superior to individuals claiming the shares under decedent's will or by intestacy.[18] The orphans' court, by characterizing the agreement as "in substance" a "gift by the deceased to the survivor," indicated that it may have believed that the shares could be included as a part of decedent's estate on the theory that they were the subject of a gift that failed for lack of delivery.[19] However, the "buy-sell" agreement was supported by sufficient legal consideration.[20] Thus the agreement cannot be characterized as a gift, let alone a gift that failed for lack of delivery.

Nor do we believe that the spouse can defeat appellant's contractual right to the shares on the basis of Section 11 of the Estates Act.[21] Even assuming that the agreement constitutes a "conveyance" within the meaning of Section 11,[22] it is clear that the deceased

---

[18] See text at footnotes 8 to 13, supra.

[19] See Bregy, Pennsylvania Intestate, Wills and Estates Acts of 1947, p. 5854 (1949).

[20] See footnote 8 and accompanying text, supra.

[21] Section 11 of the Estates Act, Act of April 24, 1947, P. L. 100, §11, as amended, 20 P.S. §301.11 (Supp. 1971).

[22] See Comment, Buy and Sell Agreements and the Widow's Rights, 114 U. Pa. L. Rev. 1006, 1009 (1966) ; Bregy, Pennsylvania Intestate, Wills and Estates Acts of 1947, pp. 5864-65 (1949).

retained no "power of revocation or consumption over the principal." The agreement to convey the shares to the survivor was clearly binding as between the brothers, and legally enforceable against their respective estates.[23] Just as decedent lacked the legal power to revoke the agreement, so too he lacked the power to consume the principal. In order to assure that neither brother while living would sell his shares to outsiders, appellant and decedent agreed that each would have the right of first refusal for the other's shares at a price of $1.00 per share. It was further agreed that a legend would be placed on the face of the stock certificates to reflect these restrictions. Decedent did not have a majority interest in the corporation, and it was clearly in appellant's interest as the only other stockholder to prevent decedent from consuming the principal value of the corporation. Moreover, as one commentator has pointed out, "[e]ven a majority shareholder has a fiduciary duty to the corporation and to the other shareholders."[24]

Nor do we think that appellant's right to specific performance of the "buy-sell" agreement should be affected by the insolvency of the estate. If anything, the estate's insolvency makes the remedy of money damages more clearly inadequate. Nor do we feel that granting specific performance here would constitute an unfair preference[25] of appellant over the creditors of the estate. By virtue of the "buy-sell" agreement decedent took the chance that if he outlived his brother, he could have owned all of the stock of Clayton L. Brown, Inc. He realized that if he predeceased his brother, his estate would be entitled to none of the

---

[23] See text at footnotes 8 to 13, supra.

[24] Shaiman, The Widow's Election—Tax and Fiduciary Considerations, 40 Temp. L. Q. 1, 27 (1966).

[25] See Restatement of Contracts, §362.

stock, but only to the price agreed upon for the stock. Decedent's creditors, who would have benefited had decedent outlived appellant, cannot now complain that it is an unfair preference to grant appellant specific performance of the agreement merely because decedent did not in fact outlive his brother.

Appellee's motion to quash the appeal is dismissed. That portion of the decree of the orphans' court that denied appellant specific performance of the agreement is vacated, and the case is remanded for entry of an appropriate decree directing the executrix to transfer decedent's stock in Clayton L. Brown, Inc., to appellant in accordance with the agreement. Each party to pay own costs.