## Peperedin Estate

*Stanley W. Rutkowski,* for accountants.

*Charles J. Conturso, Francis J. Sullivan, Harold S. Patton* and *Gerald E. Bloom, 3rd,* for claimants.

SATTERTHWAITE, P. J., January 17, 1973.—The first and final account of Walter Peperedin and Flora Mancini, executors of the estate of said decedent, was presented to the court for audit, confirmation and distribution of ascertained balances on November 6, 1972. . . .

The widow, Agnes Peperedin, contends that by reason of her election to take against the will she is entitled in distribution to one-third of the *gross* estate of which decedent died seized (as well as, apparently, certain inter vivos transfers, not now before the court,

within the ambit of section 11 of the Estates Act of 1947, now section 6111 of the Probate, Estates and Fiduciaries Code), diminished *only* by her appropriate pro rata of the Pennsylvania inheritance tax paid by accountants, and computed without allowance for administration expenses, debts, counsel fees, accountants' compensation or Federal estate taxes. She relies for these contentions fundamentally upon Runyan Estate, 10 Fiduc. Rep. 379 (1960), and Berntheizel Estate, 47 D. & C. 2d 450 (1968), 19 Fiduc. Rep. 63, conceding liability for her share of the Pennsylvania inheritance tax under Doyle Estate, 39 D. & C. 2d 635 (1966), 16 Fiduc. Rep. 276; see also Morcroft Estate, 16 Fiduc. Rep. 289 (1966).

For the reasoning outlined by Judge Klein in Morris Estate, 1 Fiduc. Rep. 141 (1950), the auditing judge agrees that, to the extent that distributions to a surviving spouse would be within the amount taken as the marital deduction under the Internal Revenue Code for Federal estate tax purposes (and that would apparently be the case as to the one-third to be awarded as the widow's elective share here), such awards should not be reduced by any Federal estate tax charge or apportionment. Accordingly, in order to compute the widow's elective share in the instant estate, the amount of the Federal estate tax ($589.68) should be added back to the net ascertained principal balance for distribution before the resulting sum be divided by three.

The auditing judge disagrees, however, with the remainder of her arguments in this connection and holds, contrary to the decisions in Runyan and Berntheizel, that she must bear her share of all other properly chargeable general credits against the gross estate, the same as would any other distributee under an intestacy or under the residuary clause of

a will. Much more logical is the reasoning to this effect in Ebert Estate, 52 D. & C. 2d 733 (1971), 22 Fiduc. Rep. 78, wherein Judge Gates for the Lebanon County Court likewise specifically refused to follow Runyan and Berntheizel. Compare Pratt Estate, 14 Fiduc. Rep. 617 (1964), affirmed 422 Pa. 446 (1966), holding that the spouse's elective share is subject to the creditor's claim of a prior spouse under a separation agreement; Beeruk Estate, 429 Pa. 415 (1968), holding that the spouse's elective share is subject to the creditor's claim of the adverse party to a decedent's contract to make a will; Grappy Estate, 21 Fiduc. Rep. 504 (1971), holding that such a share is to be computed after allowance of a pecuniary bequest in trust to provide flowers in the tax-deductible care and maintenance of testator's burial lot; Culbertson Estate, 33 Lehigh 317 (1967), holding as an apparently uncontroverted premise for further problems of distribution in cash or in kind that the widow's elective share is the appropriate fraction of the *net* estate in the accounting fiduciary's hands for distribution. See also Fiduciary Review, March 1969. Still further, compare the language used by Justice Roberts in Brown Estate, 446 Pa. 401 (1972), upholding a mutual "buy-sell" agreement between two equal sole shareholders of a close corporation, at a nominal and preferential selling price, as against the election of the widow of one of such shareholders to take against his will and against inter vivos conveyances, wherein it was stated, 446 Pa. at 412, that the relevant statutory provisions for a spouse's right of election were not intended

". . . to enable an electing spouse to include anything more in her deceased husband's estate for purposes of her election than would be includable in a decedent's estate in determining what property should pass under the provisions of his will or by intestacy."

The subsidiary problem of deciding whether the surviving widow's election has given her an undivided one-third interest in each separate asset comprising the balance for distribution, or merely a right to an unallocated one-third part of the value of the whole, may be easily resolved for purposes of the instant adjudication without attempting to rationalize the difference in the concept of passage of title on the death of a decedent between that expressed in section 301(a) of the Probate, Estates and Fiduciaries Code (formerly §103 of the Fiduciaries Act of 1949) for personalty, from that of section 301(b) (formerly §104 of the Fiduciaries Act of 1949) for realty; compare the difference in result in Morcroft Estate, 16 Fiduc. Rep. 289 (1966), involving personalty, with that in Runyan Estate, 10 Fiduc. Rep. 379 (1960), which was concerned with real property. It is clear that under the rationale of Morcroft, her interest in personalty is a right to share generally in distribution of an appropriate fraction of the value of the whole net estate, with no right or title to any particular asset. With respect to real estate, it need not now be determined in the instant case whether to follow the contrary result reached in Runyan, because the widow, through counsel of record, by writing attached to the petition for adjudication, has agreed that she will accept cash distribution equivalent to one-third of the inventory appraisal values thereof. Moreover, by the same writing, the widow has relinquished any portion of rental income from said real estate and requests to be relieved of any responsibility for maintenance expenses therefor during administration. Even if she were held to have an undivided interest in the particular parcels of real estate under Runyan, the respective specific devisees, in any event, would be entitled to be made whole for the value thereof in priority to distributees

of the residuary estate: Section 3541 (2) and (6) of the Probate, Estates and Fiduciaries Code (formerly section 751 (2) and (6) of the Fiduciaries Act of 1949). Compare Edelman's Estate, 336 Pa. 4 (1939); Brustolin Estate, 26 D. & C. 2d 708 (1961), 11 Fiduc. Rep. 523; Culbertson Estate, 33 Lehigh 317 (1967).

To recapitulate, the auditing judge holds that the one-third elective share of the widow is to be distributed to her in cash and is to be computed by dividing by three the net ascertained principal balance as increased by the amount of the Federal estate tax; and that to such one-third of the net principal amount is to be added one-third of the net ascertained income balance after excluding therefrom the $700.06 escrow fund, all rental income, and expenses allocable thereto, which may be fairly attributable to property specifically devised and to which the widow's renunciation of rental income would properly relate. In connection with such determination, it is further hereby adjudicated that the specific devises and bequests, both of real estate and of personal property, shall be made to the respective devisees and legatees free and clear of any interest or title of said widow.

The next set of problems raised in the within audit is the significance and effect of the several provisions of decedent's will with respect to bequests of United State Treasury bonds. The first question arises on the filed objections of Flora Mancini, individually. By the Fifth Item of his will, decedent bequeathed to her ". . . the following United States Treasury Bonds:

"Four Bonds in the amount of one thousand dollars each, the said bonds being in Series G, and

"One Bond, purchase price seven hundred and fifty dollars, maturity value one thousand dollars, the said bond being in Series E.

"At the present time the bonds herein mentioned

are inscribed in my name alone and it is my intention to have those bonds inscribed in my name and payable at me [sic] death to the said Flora Mancini."

At his death, decedent had no Series G Bonds; whether or not he did at the time he wrote his will in 1952 does not appear. (The purported bequest of the one Series E Bond apparently was concededly satisfied by the one $1,000 Series E Bond which was found registered in decedent's name and payable on his death to the said Flora Mancini. It also appears from the petition for adjudication that the latter bond, as well as two $1,000 Series H Bonds similarly registered, have already been turned over to the said Flora Mancini and are not involved in the within accounting.)

Flora Mancini has filed objections to the refusal of accountants to recognize her claim to four of the several $1,000 (face value) Series E Bonds found registered in decedent's name alone at his death, contending that his testamentary reference to Series G Bonds was a misdescription, since four of such Series G Bonds which he previously owned had already been theretofore converted by decedent into Series E Bonds prior to the time when he wrote his will. At audit, it was additionally or alternatively contended on the legatee's behalf that Item 5 was a general bequest of United States Treasury bonds which not only should, but must, be recognized and satisfied by the award of equivalent Series E Bonds which accountants still have in hand, citing McFerren Estate, 365 Pa. 490 (1950); Hollenbaugh Estate, 402 Pa. 256 (1961), and Yeker Estate, 81 D. & C. 585 (1952).

The first prong of this argument entirely fails for lack of proof of the factual premise upon which it is founded, and it, therefore, becomes unnecessary to consider whether or not legal merit would have been

attributable to the contention if such facts had been established. The second part of the argument, however, has merit, in part, and must be given effect.

The auditing judge believes that the objector is correct in characterizing the bequest as a general, rather than a specific, one within the definitions enunciated by Justice Stearne in McFerren Estate, supra: it is not a gift of a specific thing which was thereby identified and distinguished from all other things of the same kind and which could be satisifed only by the delivery of that particular thing (the criteria for a *specific* bequest); to the contrary, it was a gift of a number of a general category of securities which might well be met by the delivery of any of such bonds of that classification. Accordingly, being a general and not a specific bequest, the doctrine of ademption has no application and the legatee may elect to take the value in cash or have the personal representatives purchase the described items for him: McFerren, supra, 365 Pa. at 493. The auditing judge fails to find any reason or authority, however, for that part of objector's contention which requests the award of Series E Bonds in lieu of the designated Series G Bonds. It is, therefore, directed that $4,000 in cash be distributed to Flora Mancini in full satisfaction of this bequest, together with interest thereon at the rate that would have been earned by Series G Bonds from the date of decedent's death: Section 3543(c) of the Probate, Estates and Fiduciaries Code.

This same reasoning does not require that $1,000 cash be awarded to decedent's daughter, Helen Procaccini, in lieu of the $1,000 Series G Bond bequeathed to her by the Fourth Item of the will and not found after his death. That item did *not* make a *general* bequest. To the contrary, decedent there referred to a specific bond, saying, ". . . being the

same bond owned by me and inscribed in my name and payable at my death to the said Helen Procaccini." Here, decedent referred to the POD designation as a descriptive and indentifying accomplished fact, in complete contrast to his mere statement of a possibly unfulfilled future intention to accomplish a changed registration at a later date, as set forth in the nonidentifying last sentence of Item Fifth, supra, stating the general bequest to Flora Mancini. (It may parenthetically be noted that although no Series G Bonds were found after decedent's death, whether or not registered POD to Helen Procaccini, the petition for adjudication recites that there was one Series H Bond so registered POD in her favor and this apparently has been delivered to her. She has filed no objections in this audit.)

Item Seventh of decedent's will provides, inter alia, for a bequest to his daughter Mariana Potkay, of a United States Treasury Bond, described as

"One bond, maturity value, Series E. At the present time the said bond is in my name alone but it is my intention to have this bond payable at my death to Mariana Potkay."

According to the petition for adjudication, one $1,000 United States Series E Bond was found, registered in the name of decedent POD to Mariana Potkay which has been delivered to her. This bond apparently has been regarded as in full satisfaction of this bequest, since the beneficiary has filed no claim or objection at the audit.

Item Ninth of the will makes a similar bequest to daughter Alice Bunghard (Bongard) of two bonds: one $1,000 Series E and one $500 Series E. The $1,000 bond provision has apparently been deemed satisfied, such a bond being found registered in decedent's name POD to Alice Bongard and the same has been turned over to the latter. No $500 Series E bond has been

found, however. Consistent with the ruling with respect to Flora Mancini under Item Fifth, supra, accountants are hereby directed to award cash to Alice Bongard in the amount which would equal the present redemption value of a $500 maturity value United States Series E bond purchased at the initial issue price thereof as of the date of decedent's death.

Item Eleventh of the will raises a further complication. By this clause, decedent gave to his daughter, Estella Coia, "three (3) United States Treasury Bonds, maturity value one thousand dollars each, Series E. These bonds are in my name alone but I intend to make them payable to said Estella Coia."

This bequest cannot be regarded as presumptively satisfied by the finding and delivery of corresponding POD bonds in favor of the beneficiary because none such were found at decedent's death. Nor can it be simply resolved by summarily directing the award of equivalent cash, at least not without further consideration. In this instance, there were at least five (and possibly eight) $1,000 United States Series E Bonds found at decedent's death which, from the various and different issue dates appearing thereon, he must have owned at and prior to the time he made his will at an uncertain date in 1952. (All have been since liquidated by accountants.) These bonds, of course, would now be worth much more than what would be the date of death issue price for new United States Series E Bonds of similar maturity or face value, and the question immediately arises as to whether this bequest should be satisfied by the award of three of the Series E Bonds still on hand, and, if so, which three.

The auditing judge sees no realistic solution to the dilemma so presented other than to direct accountants to liquidate *all* of the United States Treasury bonds still retained by them, and, treating Item Eleventh as

378

likewise being a general legacy which cannot practically be satisifed out of assets on hand, to award cash in the amount of the present redemption value of three $1,000 United States Series E bonds as though they had been purchased at the initial issue price therefor as of the date of decedent's death. . . .

And now, this January 17, 1973, the within adjudication is directed to be filed and is hereby confirmed nisi.