**Rose Estate**

*Herbert K. Fisher*, for petitioners.
*Abraham Levin* and *Abram P. Piwosky*, contra.

SHOYER, J., June 19, 1975.—Respondent's preliminary objections raise three issues: (1) improper pleading; (2) lack of jurisdiction; and (3) failure to state a cause of action. We overrule numbers (2) and (3). There is some merit in number (1) objection, as petitioners have conceded in their brief.

Adelaide R. Raffel and Miriam Alman, the petitioners, are the daughters of Harry Rose, the testator, who

died November 29, 1973. Petitioners seek the aid of this court by citation in obtaining just and proper distribution of decedent's estate from their brother, Edgar A. Rose, whom they have named respondent, both as an individual and also as executor of their father's estate. By the terms of the will and codicils, respondent receives his father's entire estate except for a diamond ring bequeathed to a grandson. Petitioners claim rights arising from a "buy-sell" contract with their father and also their general rights as shareholders in the E.M.A. Realty Company (hereinafter called EMA), a close corporation which was founded and managed by their father from its creation until his death. They make no claim as beneficiaries under his will or the intestate laws. The respondent, Edgar A. Rose, is also named in the will as sole executor and letters testamentary were granted him by the Register of Wills of Philadelphia on December 12, 1973.

Petitioners have demanded that "Edgar A. Rose, individually and as Executor of the Estate of Harry Rose, deceased," show cause why:

"(1) Petitioners and their representative should not be permitted to examine all the books and records of E.M.A. Realty Company, including any and all settlement sheets for the sale of real property and to have true and full information of all things affecting the corporation;

"(2) Premises 2243 Christian Street, 41 South 68th Street and 6739 Woodland Avenue should not be reconveyed to E.M.A. Realty Company together with an accounting for any and all proceeds for rents received;

"(3) An accounting should not be made of the profit realized by the Decedent on the sale of 4411-16 Germantown Avenue and 1847-49-51 Ridge Avenue, Philadelphia, Pennsylvania;

"(4) An accounting should not be made for the proceeds of the Savings Account established in the Lansdowne Federal Savings and Loan Association in the name of the Decedent as well as an accounting for all funds belonging to E.M.A. Realty Company and diverted by the Decedent and used for his own purpose and use;

"(5) The thirty (30) shares of Class "B" non-voting stock of E.M.A. Realty Company held in the name of the Decedent should not be transferred and assigned to E.M.A. Realty Company;

"(6) The Shareholders Agreement for the sale of three (3) shares of Class "A" common stock of E.M.A. Realty Company to Petitioners should not be specifically enforced;

"(7) Respondent should not be declared a Trustee Ex Maleficio in regard to all funds and property retained by Respondent which rightfully belong to E.M.A. Realty Company;

"(8) Damages should not be awarded to E.M.A. Realty Company for the wrongful acts of the Decedent; and,

"(9) Attorney's fees should not be awarded to Petitioners."

Two sets of identical preliminary objections have been filed by Edgar A. Rose, the respondent. Abraham Levin, Esq., represents him as executor and Abram Piwosky, Esq., represents his interests as an individual.

Careful analysis of the nine quoted prayers for relief reveals that some are derivative in nature, i.e., in numbers 2, 3, 4, 5, 7 and 8, petitioners, who are shareholders, disclose that *qua shareholders* they have suffered no direct injury personal to themselves apart from injury to their corporation and they are suing on a corporate cause of action that management has failed to enforce. Prayers 1, 6 and 9 are personal in

nature and petitioners are suing to obtain redress for injury suffered personally and directly in violation of their rights as shareholders, which violations were allegedly perpetrated by respondent as executor.

Petitioners have also filed a complaint in equity against E.M.A., Edgar A. Rose and Marvin Goldman, which is pending and which asks for the identical relief being sought in the instant citation.

Respondent complains that petitioners' pleading is defective because it combines a direct and a derivative cause of action without separation into distinct counts, citing Weston v. Reading Railroad Company, 41 D. & C. 2d 231 (1967); Himes v. Centre Broadcasters, Inc., 29 D. & C. 2d 276 (1963). Defective pleading is not necessarily fatal, however, and may be excused by the court when no harm comes to the other party. Petitioners have alleged a fraudulent conspiracy entered into by their deceased father, some five years before his death, with their living brother. They aver that they are the owners of 60 shares of Class "B" non-voting stock and that the only other outstanding shares (30 in number) were fraudulently issued by their father to himself without consideration. The three shares of Class "A" common stock, which was the only voting stock outstanding, was held by their father but under the shareholders' agreement and a separate release by their brother prior to their father's death, said stock, they aver, must be offered to them.

They have stated several specific instances of wrongful conduct involving real estate properties and bank accounts, all of which have been adequately identified. The facts alleged are more than ample to support their claim of a conspiracy to defraud them of their rights as shareholders. This is all that we will require. See Godina v. Oswald, 206 Pa. Superior Ct. 51, 55, 211 A.2d 91, 93 (1965), where the Court said:

"The niceties of procedure and pleading make fine intelligence games for lawyers but should never be used to deny ultimate justice. This is the reason for our modern approach to rules of civil procedure. In Sheffit v. Koff, 175 Pa. Superior Ct. 37, 100 A.2d 393 (1953), this Court said at page 41: 'Since fraud is usually denied, it must be inferred from all facts and circumstances surrounding the conveyance, including subsequent conduct.' "

Since it appears that petitioners hold the only beneficial interest as stockholders, or at least a majority interest, we will not question their right to present and press the claims on behalf of E.M.A.

We believe that respondent, who is sole executor of the estate of his father, the alleged co-conspirator, is sufficiently informed by the averments in the petition to answer same on the merits. Furthermore, since the identical charges have been set forth in a bill in equity, and since this Orphans' Court Division unquestionably has jurisdiction over the principal cause of action set forth in this petition, as we shall show below, we suggest that a judge of this division be assigned to the Trial Division to sit as a chancellor in equity. The hearings in the two divisions of this one Court of Common Pleas can thus be combined, which will, no doubt, expedite the final disposition of the matter. In Redland Est., 15 Bucks 491 (1966), President Judge Satterthwaite combined a proceeding in equity with a petition in the Orphans' Court, sat as chancellor in simultaneous hearings, and brought the litigation to conclusion with joint findings of fact and conclusions of law but separate decrees.

We are fully satisfied that we have jurisdiction of the subject matter of this petition. Paragraph 2 of the shareholders' agreement entered into between decedent, respondent and petitioners provides:

"In the event of the death of any Stockholder, his or her Class A voting common stock shall first be offered for sale by the personal representatives of his or her estate, as follows:

"(a) Should the deceased Stockholder be Harry Rose, the shares of such deceased Stockholder shall first be offered to his three children, Edgar A. Rose, Adelaide R. Raffel and Miriam Goodman, who shall purchase the same at par value within thirty (30) days from the mailing of said offer."

Although by the terms of the agreement decedent's personal representative was obliged to offer the shares held by decedent to petitioners, he failed to do so. This is despite the fact that by letter of June 10, 1974, petitioners made a demand on respondent to comply with the shareholders' agreement. The demand notice states that the letter "is to serve as an official demand upon you to offer the shares of stock of the E.M.A. Realty Company to our clients in accordance with the provisions of the Stockholders Agreement dated the 12th day of March, 1957." Neither counsel representing respondent makes any point of the fact that the demand is addressed to respondent as an individual rather than as executor, and we see no merit to any such objection even if raised.

The Probate, Estates and Fiduciaries Code of June 30, 1972, P. L. 508 (no. 164), in section 711, 20 Pa.S. §711, which is entitled "Mandatory exercise of jurisdiction through orphans' court division in general," provides, in part, as follows:

". . . the jurisdiction of the Court of Common Pleas over the following shall be exercised through its orphans' court division:

". . .

"(13) Specific Performance of Contracts. To enforce specifically the performance by either party of any

agreement made by a decedent to purchase or sell real or personal property."

In Brown Estate, 446 Pa. 401, 289 A.2d 77 (1972), it was held that the Orphans' Court has jurisdiction to enforce the claim of a stockholder in a close corporation to specific performance of a "buy-sell" agreement against decedent's estate. The claimant's rights were held superior to the elective rights of the widow and also to the rights of individuals claiming the shares under decedent's will or by intestacy. The court said that "it is clear that specific performance is a particularly appropriate remedy for enforcement of 'buy-sell' agreements for shares of stock of closely held corporations. Money damages would not be an adequate remedy": Page 409.

In Mather Estate, 410 Pa. 361, 189 A.2d 586 (1963), the Orphans' Court entered judgment on the pleadings and ordered specific performance of a written stock option agreement. On appeal to our Supreme Court, the judgment was affirmed.

In Kohl v. Lentz, 454 Pa. 105, 311 A.2d 136 (1973), Kohl entered into an agreement whereby he was given the right to purchase, at book value, Lentz's stock, both during Lentz' lifetime as well as after his death. Lentz thereafter died and Kohl instituted an action in equity to specifically enforce the agreement. Lentz's widow and the corporation were jointly named as defendants, but she was described in the complaint as an individual and executrix under Lentz' Will. Preliminary objections were filed raising the question of whether jurisdiction in the subject matter of the action was exclusively vested in the Orphans' Court Division. The Supreme Court affirmed the action of the lower court in sustaining the preliminary objections and dismissing the action for lack of jurisdiction.

The Supreme Court's decision was based on the

Orphans' Court Act of August 10, 1951, P. L. 1163, art. III, sec. 301, 20 PS §2080.301, which is identical to the above section in Purdon's Consolidated Pennsylvania Statutes. The court stated at 454 Pa. 109:

"The shares of stock in News Agency were in the name of the decedent at the time of his death and the ownership of such stock was exclusively a matter to be determined in the Orphans' Court Division. . .

". . .

"Kohl has a full and complete remedy in the Orphans' Court Division wherein he could seek specific performance of the agreement between Lentz, the News Agency and himself and the question of valuation of the stock owned by the estate can be determined in that division. Both under the statute and the case law exclusive jurisdiction of this controversy is vested in the Orphans' Court Division."

The petition alleges that at the time of his death decedent was the owner of the three shares of Class "A" voting common stock, which is the subject matter of this dispute. Under the statute and the decisions, exclusive jurisdiction over an action to specifically enforce the shareholders' agreement is vested in the Orphans' Court Division.

*The Petition States a Valid Cause of Action*

Respondent objects that this Orphans' Court Division is without power to grant the relief requested in paragraphs 2, 3, 4, 5 and 7 of petitioners' prayers for relief because they have failed to state a cause of action. As to paragraphs 2, 5 and 7, they specifically allege the fault to be that respondent is no longer in possession of the property named in these paragraphs and petitioners have failed to comply with the requirements of the Probate, Estates and Fiduciaries Code, supra, 20 Pa.S. §3532(a) and (b)(1)(2), which reads as follows:

"§3532. At risk of personal representative.

"(a) Rights of claimants against personal representatives. A personal representative, at his own risk and without the filing, audit or confirmation of his account, may distribute real or personal property and such distribution shall be without liability to any claimant against the decedent who has not given notice of his claim as provided by this code within *one year after the first complete advertisement* of the grant of letters to such personal representative or thereafter but prior to such distribution.

"(b) Rights of claimants against distributed property.

"(1) Personal property. No claimant shall have any claim against personal property distributed by a personal representative at his own risk pursuant to subsection (a) hereof, unless such claimant has given notice of his claim to the personal representative as provided by this code within *one year after the first complete advertisement* of the grant of letters, or thereafter but prior to such distribution.

"(2) Real property. No claimant shall have any claim against real property conveyed by a personal representative in distribution at his own risk pursuant to subsection (a) hereof, unless such claimant, within one year after the decedent's death, files a written notice of his claim with the clerk. Such claim against real property shall expire at the end of five years after the decedent's death, unless within that time the personal representative files an account or the claimant files a petition to compel an accounting." (Emphasis supplied.)

It is alleged that petitioners never gave notice to respondent in his *fiduciary capacity* within one year of the "first advertisement of letters" which is alleged to have been on December 14, 1973. It is noteworthy

that respondent has not alleged the "first *complete* advertisement of the grant of letters," which is defined in Section 102, 20 Pa.S. to mean an advertisement "on at least one occasion, in both the newspaper and in the legal publication." Regardless of whether or not the advertising has been completed as required by the code, we cannot recognize this objection when it is only spelled out by respondent in the briefs of his counsel. Such practice is no better than a speaking demurrer which was always held to be bad pleading.

It is also significant that petitioners have alleged that the distribution made by respondent was either to himself alone or to his wife and himself. In Miller v. Hawkins, 416 Pa 180, 205 A.2d 429 (1964), our Supreme Court, in speaking of section 732 of the Fiduciaries Act of April 18, 1949, P. L. 512, art. VII, sec. 732, 20 PS §320.732, the predecessor of section 3532(a) and (b), said this section should not be used as a shield to place assets of an estate beyond the reach of legitimate creditors. The court said, at 416 Pa. 198:

"Section 732 of the Fiduciaries Act of 1949 was intended as a statute of repose of claims of non-diligent creditors and not as a statute whereby legitimate claims, the existence of which both the personal representative and his counsel had acknowledged, could be outlawed."

For the above stated reasons, we believe that the preliminary objections which respondent has filed should be dismissed and he should be required to answer the averments in the petition on the merits. Where there are serious allegations of multiple fraud, as in this case, we have learned by experience that we cannot do justice to all parties without an impartial hearing of the factual issues after they have been sharply defined by the pleadings: Gears Estate, No. 372 of 1973 (not yet reported); Diamandas Estate, 73

D. & C. 334 (1950); Reichert's Estate, 52 D. & C. 254 (1944); Williams v. Rose, 403 Pa. 619, 624, 170 A.2d 577 (1961); Gallagher v. Merry, 366 Pa. 258, 77 A.2d 379 (1951).

Petitioners have not asked for the filing of an account. Since the hearing which we contemplate should take place at an audit in conformity with our usual practice (see Hill, Minor, 64 D. & C. 2d 94, 24 Fiduc. Rep. 365, 369 (1974); Parkhurst Est., 14 D. & C. 2d 661, 665, 8 Fiduc. Rep. 442, 446 (1958)), we are sua sponte directing respondent to file an account within 60 days, provided that the requirements of advertising, as stated in section 3501 of the code, have already been complied with. If additional time is required for the advertising, then we order that the account be filed at the end of four months, in compliance with section 3501.1 of the code, as amended by Act No. 293, sec. 7, enacted on December 10, 1974.

Accordingly, we enter the following

DECREE

And now, June 19, 1975, the preliminary objections filed by respondent, both as an executor of the estate of Harry Rose, deceased, and in his individual capacity, are dismissed. Leave is granted to respondent, Edgar A. Rose, to file answers to the merits within 30 days of the date of this decree.

Edgar A. Rose is ordered and directed to file his account as executor of his father's estate within 60 days, provided that the requirements of advertising as stated in section 3501 of the Probate, Estates and Fiduciaries Code have already been complied with. If additional time is required for the advertising, then we order and direct that the account be filed at the end of four months in compliance with section 3501.1 of the Probate, Estates and Fiduciaries Code, as amended by Act No. 293, enacted on December 10, 1974.