## American Bank v. Lied Estate

*George J. Morgan* and *Lawrence J. Ruggiano,* for petitioner.

*Lawrence E. Stengel,* for respondent.

APPEL, Adm. *J.,* October 30, 1975—Petitioner seeks a decree of specific performance of a stock purchase agreement which was executed by the two co-owners of the stock of a corporation and the corporation itself.

Ray E. Lied and Eugene R. Lied, father and son, respectively, had conducted a successful business operation for some years as a partnership. In October 1960, they organized a corporation, Ray E. Lied & Son, Inc., to which most of the assets of the partnership were transferred and the corporation issued 500 shares of stock to each of them. On October 20, 1960, the two stockholders and the corporation executed the agreement which the personal representative of one of the stockholders seeks to enforce.

The agreement contains a preamble of which the following is pertinent:

"And Whereas, the stockholders desire to promote their mutual interests and the interest of the corporation by imposing certain restrictions and

obligations on themselves, the corporation and on the shares of stock of the corporation: . . ."

Thereafter the parties, in consideration of the mutual promises, covenants and agreements, provided for the restricted offering of the stock for sale during the lifetime of either individual, the method of determining the purchase price, the purchase of the stock upon death, the obtaining of life insurance and other interrelated matters pertaining thereto.

The company thereafter insured the lives of the stockholders naming itself as the beneficiary. On January 6, 1974, Eugene R. Lied died. Shortly thereafter, on January 15, 1974, the father, Ray E. Lied, also died. It is admitted that the book value of the shares of stock of Eugene R. Lied at the close of the fiscal year preceding his death was $133,904. At the times of the deaths of the stockholders, the insurance carried by the corporation on the life of Eugene was $125,000 and on Ray the sum carried was $100,000.

Paragraph 4 of the agreement relates to the purchase of stock upon the death of a stockholder, as follows:

"4. Purchase Upon Death: Upon the death of a stockholder all the shares of the stock of the corporation owned by the deceased stockholder and to which he or his personal representative shall be entitled, shall be sold and purchased as herein provided.

"(a) Obligation of Corporation: The corporation shall purchase from the decedent's personal representative and the decedent's personal representative shall sell all the shares of the stock of the corporation owned by the decedent and to which the decedent or his personal representative shall

be entitled at the price determined in accordance with Paragraph 2. Settlement shall be made not more than sixty days following the date of the qualification of the personal representative."

Paragraph 2 establishes the purchase price as the book value at the close of the fiscal year preceding the date of death of the stockholder. It has been stated previously that this sum is $133,904. The American Bank and Trust Co. of Pa., executor of the will of Ray E. Lied, deceased, has asserted that the personal representative of the estate of Eugene R. Lied is obligated to sell 500 shares of stock owned by that estate to the corporation and that the corporation is obligated to purchase the stock for the sum of $133,904.

June G. Lied, executrix of the will of Eugene R. Lied, has taken the position that the provisions of paragraph 4 are inapplicable because of the death of Ray E. Lied, which occurred shortly after the death of Eugene and prior to the end of the 60-day period provided for settlement. She asserts that to conclude otherwise would do violence to the purpose of the agreement as stated in the preamble and would lead to an absurd and unjust result. Obviously, the result to which she objects is that the corporation would derive the benefit of the proceeds of the insurance on the life of the second stockholder to die and that the estate of the first stockholder would receive no benefit therefrom.

The conflicting positions taken by the stockholders created a deadlock in the corporation with regard to its fulfilling the obligation to purchase the stock as provided in the above paragraph. The corporation having been rendered powerless to move on its own behalf, the executor of the will of Ray E. Lied now seeks a decree of specific performance

requiring that the executrix of the will of Eugene R. Lied transfer 500 shares of stock of Ray E. Lied & Son Inc. to the corporation upon receipt of the sum of $133,904.

Respondent has initially raised the question of whether the executor is a proper party to seek specific performance of a right granted to the corporation. We conclude that the executor is a proper party. Section 3390(a) of the Decedents, Estates and Fiduciaries Code of June 2, 1972, P.L. 508, 20 P.S. §3390, provides, as follows:

"(a) Application to court.—If any person makes a legally binding agreement to purchase or sell real or personal estate and dies before its consummation, his personal representative shall have power to consummate it, but if he does not do so, the court, on the application of any party in interest and after such notice and with such security, if any, as it may direct, in its discretion, may order specific performance of the agreement if it would have been enforced specifically had the decedent not died."

It is noted that this section provides that the application for specific performance may be made by "any party in interest." The refusal of the personal representative of Eugene to sell the stock constitutes a failure by her to exercise her duty to consummate the agreement entered into by her decedent. Because of this refusal, it has become necessary for an application for specific performance to be presented to the court. Normally, it might be expected that the purchaser would be the moving party; however, the prospective purchaser, i.e., the corporation, has been reduced to inactivity because of the stalemate between the two stockholders. Obviously, if the position of petitioner is

correct, the only stock of the corporation which would be outstanding after settlement would be that of petitioner who would thereupon become the sole owner of stock of the corporation. At that time, the corporation, in essence, would be an alter ego of petitioner. Viewed in this light, petitioner must be deemed to be a party in interest and, therefore, a party having authorization to seek the remedy sought.

Since the agreement was entered into by the stockholders "to promote their mutual interests," it must be deemed that as to that part of the agreement which is between the corporation and one stockholder, the other stockholder is a third-party beneficiary with respect thereto. It again appears that the stockholder must be considered as a party in interest and, therefore, a proper applicant for specific performance.

The second question which has been raised by petitioner is:

"Was it the intention of the parties to the stock purchase agreement that the estate of a surviving stockholder should have the same rights to purchase the stock of a deceased stockholder as a surviving stockholder?"

Counsel for each of the parties have directed our attention to Mather Est., 410 Pa. 361, 189 A.2d 586 (1963), in which the court said the following, at page 366:

"In order to determine the meaning of the agreement, we must examine the entire contract since it is well settled that in construing a contract the intention of the parties governs and that intention must be ascertained from the entire instrument taking into consideration the surrounding circumstances, the situation of the parties when

the contract was made and the objects they apparently had in view and the nature of the subject matter."

Respondent suggests that several clauses in the agreement are ambiguous; however, everything which he has directed our attention to is predicated on a conclusion that the surviving stockholder is the purchaser. We have already pointed out that the surviving stockholder is the proper applicant before the court for the purpose of enforcing the rights of a stalemated corporation toward the end that the corporation purchase the stock owned by the estate of the first decedent. Respondent equates the party petitioner with purchaser and this simply is not the case. The party petitioner is the executor of the will of the second decedent; the purchaser is the corporation. The agreement is not ambiguous with respect to what shall transpire between the corporation and the estate of the first stockholder to die; therefore, it is not necessary to look beyond the provisions which are applicable upon the first death of a stockholder.

The third point raised by respondent is that specific enforcement is not appropriate because "unforeseen and unexpected circumstances have rendered enforcement of the agreement inequitable." We would be the first to agree that the result which must here obtain is unfortunate as to respondent; however, unfortunate though it may be, it is not inequitable so as to render the agreement unenforceable. The individuals have agreed that upon the death of one of them certain things shall occur. As to the decedent, his estate is to receive a purchase price ascertained in a manner deemed to be fair and just to the individuals. As to the survivor, he is placed in control of a corporation

whose fortunes will then rise or fall depending upon his management and the circumstances which thereafter occur. The circumstance which has here occurred is that the survivor has died and the monetary worth of the corporation has been substantially increased. Respondent argues that the estate which she represents should share in that increase.

The fallacy of this contention may be exposed by the following example. Let us suppose that after the death of the first stockholder and prior to the corporation making settlement for decedent's stock there is a great flood which inundates the plant of the corporation, thereby causing severe injury to the machinery, equipment, inventory and realty and that none of the loss is recoverable by insurance. Would it then be contended that the corporation is not required to make settlement under paragraph 4 of the agreement in the belief that the unforeseen and unexpected flooding rendered the enforcement of the agreement inequitable?

The mutual interests which we find the stockholders to have been seeking to promote are clearly discernible. It is provided that upon the death of one stockholder, his estate would receive a sum the determination of which had previously been established. The interest of the survivor is promoted by establishing a situation which would permit him to conduct the business of the corporation without interference or participation of others. The ongoing success or the possible failure of the corporation was thereupon to be dependent on the intelligence, skill and dedication of the survivor. The rise or fall of the fortunes of the corporation would affect only the surviving stockholder and

would not produce a change in the affairs of those who would accede to the estate of the first decedent.

Respondent argues that the agreement fails to provide for the situation where both stockholders die before the provisions of paragraph 4 shall have been executed. It may be pointed out that the agreement also fails to provide for the situation of where the provisions have been executed within the period and one day after settlement the surviving stockholder dies. We are unable to ascertain the period of time respondent would require the surviving stockholder to live to make the provisions of paragraph 4 continue to be effective. Must he live until settlement, must he live until expiration of the 60-day period, or is there some other period he must live so that the agreement shall continue in effect? It is appropriate to inquire as to what unforeseen and unexpected circumstances would vitiate the agreement entered into by the parties. It is argued that death of the surviving stockholder is such a circumstance. Might it also be argued that a sudden change in marketing procedures or decrease in cost of raw materials, either of which would result in greatly increased profits, are such unforeseen and unexpected circumstances? If the agreement provided for unforeseen and unexpected circumstances and failed to enumerate the circumstances which were contemplated, then there might be an ambiguity which would require explanation and exploration. However, in the agreement which is now before us there is no ambiguity; the language is clear and definite. There is no basis on which we can perceive a justification to proceed excepting as provided by the agreement. Paragraph 4 is certain.

We see no need to regard what is certain, uncertain, nor to render that which is definite, indefinite.

It may be noted that mere inadequacy of price does not cause the agreement to be unenforceable.

In Mather Estate, supra, the agreement provided for a purchase price of $1 per share. Testimony established that the book value was $444.92 and the actual value was not less than $1,060 per share. In Brown Est., 446 Pa. 401, 289 A.2d 77 (1972), the price agreed upon was $1 per share and one expert estimated the fair market value at $222 and another estimated the corporate value at $76. In each instance, the court recognized the agreed-upon valuation despite the wide variation between it and other values then indicative of its actual worth.

We, therefore, conclude that petitioner is entitled to the relief sought, so that the corporation shall acquire the 500 shares of common stock of Ray E. Lied & Son, Inc., upon payment of the sum of $133,904. Upon counsel for petitioner presenting a decree in accordance with the conclusions stated herein, it will be entered.