Commonwealth *v.* Jacobs, Appellant.

Argued December 7, 1970.   Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Mark P. Widoff,* with him *Donald R. Stemmer,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *Peter S. Greenberg,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAULDING, J., April 15, 1971:

This is an appeal from a support order entered against appellant Alfonso Jacobs, on June 4, 1970, by Judge Benjamin SCHWARTZ of the Court of Common Pleas of Philadelphia, Family Division, Women's Branch.

In September 1969, prosecutrix Darlene Holland filed a complaint alleging that appellant was the father

of her child Bryant Holland, born out of wedlock June 5, 1968. Pursuant to the provisions of The Pennsylvania Civil Procedural Support Law, Act of July 13, 1953, P. L. 431, as amended, Act of August 14, 1963, P. L. 872, §1, 62 P.S. §2043.31 et seq., appellant was summoned to appear before the court. He denied paternity and requested that blood groupings be performed. Bills of indictment were drawn by the Commonwealth charging appellant with the crimes of fornication and bastardy, Act of June 24, 1939, P. L. 872, §506, 18 P.S. §4506, and neglect to support a bastard, Act of June 24, 1939, P. L. 872, §732, 18 P.S. §4732. Prior to the date set for trial, appellant's counsel and the District Attorney's office "agreed" that the Commonwealth would enter a nolle prosequi and that the paternity issue would be tried under The Pennsylvania Civil Procedural Support Law, supra, by a judge sitting alone. The Commonwealth's motion to nol pros. and appellant's motion to proceed civilly were denied by Judge SCHWARTZ on the basis that *Commonwealth v. Dillworth,* 431 Pa. 479, 246 A. 2d 859 (1968), had established that a trial court did not have jurisdiction to try a contested paternity issue as a civil matter or to enter a support order without a prior determination in a criminal proceeding.

On April 27, 1970, appellant's renewed motion for a civil determination of paternity was denied.[1] At jury trial on the above indictments, a demurrer was sustained on the charge of fornication and bastardy and appellant was found guilty of neglect to support a bastard. Appellant's motions for a new trial and in

---

[1] On this second occasion, the District Attorney argued pro forma against appellant's motion. This was done in order to avoid the possibility that the Commonwealth would lose the right to try the defendant by agreeing to waive criminal prosecution, since the court had already indicated that it did not have civil jurisdiction.

arrest of judgment were denied and an order of support for the child was entered in the sum of ten dollars per week. Appellant appeals that order.

The question before us is whether a putative father must have the issue of his alleged paternity determined through a criminal proceeding for fornication and bastardy and/or neglect to support a bastard, or whether he may choose to have that issue decided as a civil matter under the relevant provisions of The Pennsylvania Civil Procedural Support Act, supra.[2] We conclude that *Dillworth,* supra, does not require that all putative fathers be tried in criminal proceedings. Rather, we read that decision as a mandate to safeguard the *right* to jury trial (and the other protections afforded in criminal proceedings).

At common law neither the mother nor the father had any duty to support their illegitimate child. However, it became far too costly to the community for parental responsibility to remain on a purely voluntary basis, and to remedy this problem Parliament enacted the Poor Law of 1576.[3] Although the statute shows

---

[2] Among appellant's other arguments is the contention that there is an unconstitutional denial of due process and equal protection through the discriminatory enforcement of a penal law where the putative father is forced to undergo a criminal proceeding, whereas the prosecutrix, a principal in the same offense, is not adversely affected at any time. We do not need to reach this constitutional issue.

[3] Poor Law Act, 1576, 18 Eliz., 1, c.3: "Concerning bastards begotten and born out of lawful matrimony, (an offense against God's law and man's law) the said bastards being now left to be kept at the charges of the parish where they be born, to the great burden of the same parish, and in defrauding of the relief of the impotent and aged true poor of the same parish, and to the evil example and encouragement of lewd life: (2) it is ordained . . . that two justices of the peace . . ., as well for the punishment of the mother and the reputed father of such bastard child, as also for the better relief of every such parish . . . [shall] take order for

some intent to punish and deter promiscuous conduct, its primary purpose was to shift the financial burden from the community to the parents of the illegitimate child.[4]

In the United States today, wide differences exist among the fifty states' procedures for fixing parental responsibility and assuring child support. Some, like Massachusetts[5] and Pennsylvania,[6] provide that bastardy is a crime and may combine it with a prosecution for fornication. Other states provide explicitly that the action is civil.[7] Notwithstanding differences in terminology and labels, the purpose of each of these procedures is civil redress for support of the child.

Under the original Support Act of 1953 the definition of "duty of support" did not include any reference to a child born out of wedlock,[8] and thus criminal prosecutions were initiated by the Commonwealth as the only available procedure for determining paternity and providing support for the child; not to impose punishment for the act of fornication *per se*, see *Com-*

the keeping of every such bastard child, by charging such mother or reputed father, with the payment of money weekly or other sustentation for the relief of such child, in such wise as they shall think meet and convenient: (4) and if . . . mother or reputed father . . . shall not for their part observe and perform the said order; that then every such party so making default in not performing of the said order, to be committed to ward to the common gaol . . . ."

[4] Robbins & Deak, The Familial Property Rights of Illegitimate Children: A Comparative Study, 30 Colum. L. Rev. 308, 319 (1930) ; Comment, 115 L.J. 191 (1965).

[5] Mass. Ann. Laws ch. 272, §18.

[6] Act of June 24, 1939, P. L. 872, §732, 18 P.S. §4732.

[7] E.g., Neb. Rev. Stat. §13-11 (1954).

[8] Such duties included only those "imposed or imposeable by law or by any court order or decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, legal separation, separate maintenance or otherwise." 62 P.S. 2043.32.

*monwealth v. Bertram,* 143 Pa. Superior Ct. 1, 16 A. 2d 758 (1940). Orders for support for the illegitimate child were entered only *after* a determination paternity had been established by such criminal proceedings under The Penal Code.

In recognition of this state of affairs, the Legislature provided a method of ensuring such support without prior resort to the criminal process, through the August 14, 1963 Amendment to The Pennsylvania Civil Procedural Support Law.[9] The Amendment expanded the earlier definition of "duty to support" to include any duty "imposed by prosecution for failure to support a child born out of lawful wedlock or otherwise" and ostensibly provided for a *determination* of paternity under the Act. The issue involved in *Dillworth,* supra, was solely whether the 1963 Amendment superseded and precluded the prior practice of using criminal procedure to determine paternity in a case where the putative father demanded a jury trial. *Dillworth* held that the protections inherent in a criminal trial could not be abrogated by the court and that the putative father was entitled to a trial by jury where he insisted upon enforcing that right.

In the instant case, however, appellant does not desire a jury trial and the protections of the criminal process. Rather, he desires a civil determination by a court of equity as ostensibly provided in that 1963 Amendment. Although the court below was reluctant to undertake a civil determination absent appellate precedent, we feel that *Dillworth* should not be applied to prohibit civil jurisdiction unless the putative father has demanded trial by jury. *Dillworth* emphasizes the defendant's *right* to such trial and the corollary proposition that this right may not be summarily refused even after the enactment of the 1963 amend-

---

[9] Act of August 14, 1963, P. L. 872, §1, 62 P.S. §2043.32.

ment. The Court's statement that "we are of the opinion that the legislature never intended to authorize a determination of paternity by a judge alone . . ." 431 Pa. at p. 483, can and must be interpreted in light of the fact that the putative father in *Dillworth* demanded a criminal proceeding with a jury trial. The Court in its brief opinion did not decide or even mention whether there were any impediments to trying the issue of paternity civilly under the procedure set out in The Pennsylvania Civil Procedural Support Act where the defendant wished to be so tried. Further, the Court emphasized throughout its opinion that it was not holding the 1963 Amendment either unconstitutional or without effect. As a specific example of when the Act could be utilized the Court referred to the instance in which the putative father admitted paternity but disputed the amount of support. In those situations, the subsequent orders under the Act could be made without recourse to any prior criminal adjudication and the court could accept the admission of paternity as an admission entered under the Act. We read the above as indicative of the Supreme Court's intention to interpret the 1963 Amendment as conferring substantive as well as procedural jurisdiction in the lower court. This interpretation would give substantive effect to the Act so long as it in no way attempted to preempt a defendant's right to demand a trial by jury and the ancillary protections of the criminal proceeding. It would also give the law as great an effect as possible by allowing the putative father to have his alleged paternity determined under the Act, if he so chooses.

Inevitably, paternity proceedings, whether labeled civil or criminal, result in a certain community stigma following a judicial acknowledgment of the parents' impropriety. An enlightened public interest in assuring support for the child does not require imposing further

undue punishment or embarrassment on either of the parents. By allowing the putative father the alternative of a civil determination, of both paternity and amount of support, the child's interest will in no way be adversely affected. Where a defendant chooses a civil determination, he will be deemed to have fully waived his jury trial rights and all other protections ancillary to criminal proceedings including the right to have guilt proven "beyond a reasonable doubt." If he is adjudicated to be the father of the child, the subsequent support order entered under the Act can be adequately enforced through contempt sanctions provided in the Act.[10] Our reading of *Dillworth* convinces us that the Supreme Court recognized these factors by permitting a civil court to enter an order where the putative father had previously admitted paternity, and thereby not requiring the latter to "suffer the stigma of pleading guilty to a criminal offense." 431 Pa. at 485. It is our opinion as well, that as long as the innocent child's support is guaranteed, it is certainly not in anyone's "best interest" to force the putative father to undergo the often sordid spectacle of a criminal proceeding.

In addition, a civil adjudication of paternity under the Act is advantageous for the Commonwealth as well as for the defendant: more cases can be heard per judge per court day; the cost of the proceedings and record keeping is greatly reduced; and the time in which the action can be brought is not governed by a statute of limitations.[11] In sum, the public interest requires

---

[10] Act of July 13, 1953, P. L. 431, §9, as amended, July 3, 1957, P. L. 452, §1, 62 P.S. §2043.39.

[11] Criminal proceedings in this area *are* subject to the Statute of Limitations. For example: Fornication and Bastardy must be brought within two years from the date of conception of the child. *Commonwealth v. Dunnick*, 204 Pa. Superior Ct. 58, 62, 202 A. 2d 542 (1964).

the guaranteed support of the child; it does not require the father to undergo a criminal proceeding and carry the often heavy burden of a criminal record through his lifetime. We feel that allowing the putative father this civil option is sound statutory construction, consistent with the holding in *Dillworth* and in the best interests of the community.

Finally, we would be remiss if we failed to comment on the fine brief submitted by appellant's counsel, Community Legal Services of Philadelphia. As the quality of briefs submitted to this Court, at times, leaves much to be desired and often works to the detriment of the indigent client, it is indeed heartening to see such a well written brief.

The judgment of the lower court is vacated and appellant will be allowed to have paternity determined in a civil nonjury proceeding.