Stanis et al., Appellants, *v.* Simpson.

58

Argued March 14, 1973.  Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Ruth F. Cooper,* with her *Cooper & Signorella,* for appellants.

*Bernard J. Sweer,* for appellees.

Opinion by Mr. Justice O'Brien, May 23, 1973:

In March of 1970, Walter Guro and Sophie Guro brought suit against George J. Simpson and Mary Ellen H. Simpson, appellees herein, in equity, alleging that some nine years prior and before the marriage of Walter Guro and Sophie Guro, appellees had fraudulently induced appellant Walter Guro to put Mary Ellen H. Simpson's name on certain certificates of a savings and loan association wherein Mr. Guro had an account. Prior to the actual trial, but after the filing of the complaint, Walter Guro died, and his executor was substituted as a party litigant.[1] After the taking of testimony, the chancellor entered a compulsory nonsuit against appellants herein. Exceptions were taken and denied, and a final decree was entered. This appeal followed.

Appellants contend that the chancellor erred in granting the compulsory nonsuit because a confidential relationship was shown to exist between the decedent and Mrs. Simpson so that the appellees had the burden of proving that the inter-vivos gift was freely given. In *Fuller v. Fuller*, 372 Pa. 239, 244, 93 A. 2d 462 (1953), when discussing the problem of a confidential relationship, we stated: "In order to establish his claim, the burden was upon him to prove the existence of undue influence unless he showed a confidential relationship between appellee and the decedent. If he successfully established such confidential relationship, then the burden of showing the nonexistence of undue influence was upon the donee-appellee."

---

[1] Appellants argue that once Walter Guro died, this case came within the exclusive province of the Orphans' Court Division. However, even prior to the creation of a unified Court of Common Pleas, under Art. 5, §5, of the Pennsylvania Constitution, we note that the suit would have remained in the court where it had originally been properly brought.

In *Young v. Kaye*, 443 Pa. 335, 342-343, 279 A. 2d 759 (1971), we defined a confidential relationship as follows: "It is not restricted to any specific association of persons nor confined to technical cases of fiduciary relationship but is deemed to exist whenever the relative position of the parties is such that one has the power and means to take advantage of or exercise undue influence over the other."

Upon review of the record, we find that no confidential relationship existed between Walter Guro and Mrs. Simpson. Mrs. Simpson's relationship with the decedent was nothing more than one of friendship. There was no proof offered that she managed the moneys of the decedent or guided him in matters of importance. While the decedent was in fact unfamiliar with the English language, the record reveals that the decedent handled his own business affairs prior to his death and was fully competent in these matters.

The testimony of Mrs. Simpson, upon which appellants rely, fully supports the conclusion that no confidential relationship existed. She specifically testified as follows on cross-examination: Q. Did you ever take care of paying any bills on behalf of the Guros? A. When Mrs. Guro was in the hospital and Mr. Guro would get the money for payment, I would go with him to the hospital, visit, and we would go with him to the cashier's desk at the hospital while he paid the bill. I was along. Q. Did you take care of any financial affairs for Adela and Walter Guro? A. When they would receive a letter or a bill, tell them what the bill was. I would read it for them and let them know what the bill stated or what the letter was."

And later, when the question was asked again: "Q. Did you ever use any of this money to pay any bills or take care of any financial obligations for Mr. and/or Mrs. Guro? A. No." Mrs. Simpson's many acts of kind-

ness to Walter Guro, by themselves, are not enough to establish a confidential relationship.

Appellants finally allege that the chancellor committed error in refusing to allow Alex Stanis, the executor of the estate of Walter Guro, to testify as to matters relating to the transfer of the assets in question occurring prior to the death of the decedent. In the instant case, the transfer to the appellees was prima facie valid. In situations such as this, the donee represents the interest of the decedent and the personal representative or executor of the estate has an adverse interest, thus barring him from testifying as to matters that occurred before the death of the decedent. Act of May 23, 1887, P. L. 158, 28 P.S. §322. See *Katz v. Lockman,* 356 Pa. 196, 51 A. 2d 619 (1947).

Decree affirmed. Costs to be borne by appellants.

Mr. Justice Nix dissents.

Mr. Chief Justice Jones took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I dissent. Walter Guro, in his lifetime, began a lawsuit against Mary Ellen H. Simpson. Guro, in the lawsuit, challenged an alleged gift to Simpson. After Guro's death, his executor represented Guro's interests in the lawsuit. The majority states that the alleged donee represents the decedent's interests in the very lawsuit began by the decedent against the donee. To say under such circumstances that the alleged donee now represents the interests of the decedent—the very person who brought suit against the donee challenging the gift—is prima facie unreasonable. In this case testimony by the executor should not have been barred under the Act of May 23, 1887, P. L. 158, 28 P.S. 322. The decree should be reversed and a new trial granted.