McConnell *v.* Schmidt, Appellant.

Submitted November 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Gilbert E. Morcroft,* for appellant.

*Francis A. Muracca,* for appellee.

Opinion Per Curiam, April 22, 1975:
The order of the court below is reversed.

This court held two votes on this case. Initially, a vote was held on whether to hear this appeal on its merits, or to quash it as interlocutory. A majority of the Court, consisting of Hoffman, Price, Van der Voort, and Spaeth, JJ., voted to hear this appeal. Watkins, P.J., and Jacobs and Cercone, JJ., voted to quash this appeal as interlocutory. The full Court then voted on the merits of this appeal. A majority of the Court, consisting of Jacobs, Hoffman, Cercone and Spaeth, JJ., voted to reverse on the merits. Watkins, P.J., Price, and Van der Voort, JJ., voted to affirm.

Opinion by Hoffman, J., in Support of Per Curiam Order To Reverse:
Appellant, the putative father of three illegitimate children, contends that the lower court erred in ordering that the disputed question of paternity be tried by a civil jury where the statute of limitations on a criminal bastardy proceeding expired approximately nine years ago.

On June 27, 1967, appellee filed a complaint under the Civil Procedural Support Law[1] in the County Court of Allegheny County (now the Family Division of the Court of Common Pleas of Allegheny County). The complainant alleged that appellant was the father of her three children, and asked that appellant be ordered to make support

---

1. Act of July 13, 1953, P.L. 431, §1, *et seq.,* as amended by the Act of August 14, 1963, P.L. 872, §1; 62 P.S. §2043.31 *et seq.*

payments for them. The three children were born on October 18, 1957; February 26, 1959; and May 5, 1963. Although the record indicates that an unsuccessful attempt was made to serve appellant with a warrant in December, 1967, or January, 1968, it appears that appellant was not actually served with process until approximately January 7, 1974. On January 10, 1974, a hearing was held to show cause why a support order should not be issued. Although appellant did not testify, his attorney appeared and denied that appellant was the father of the children. Appellant's attorney argued that because paternity was in dispute, the lower court could not make a determination that appellant was the father of the three children, consistent with the holding of *Commonwealth v. Dillworth*, 431 Pa. 479, 246 A.2d 859 (1968). On February 6, 1974, the lower court denied appellant's motion to dismiss this action, and ordered that the issue of paternity be certified to the lower court's Civil Division for trial by jury. This appeal followed.

Our Court held two votes on this case. Initially, a vote was held on whether to hear this appeal on its merits, or to quash it as interlocutory. A majority of the Court, consisting of HOFFMAN, PRICE, VAN DER VOORT, and SPAETH, JJ., voted to hear this appeal. WATKINS, P.J., and JACOBS and CERCONE, JJ., voted to quash this appeal as interlocutory. The full Court then voted on the merits of this appeal. A majority of the Court, consisting of JACOBS, HOFFMAN, CERCONE and SPAETH, JJ., voted to reverse on the merits. WATKINS, P.J., PRICE, and VAN DER VOORT, JJ., voted to affirm. This opinion announces the decision of the Court on both the appealability of the lower court's order and the merits of this case.

I

Before discussing the merits of this case, it is necessary to determine whether this Court has jurisdiction of this appeal. Ordinarily, the appellate jurisdiction of

this Court is limited to appeals from final orders of lower courts.[2] The instant appeal is interlocutory, as neither party has been put out of court by the lower court's order, which calls for further proceedings in the Court of Common Pleas. See *Ventura v. Skylark Motel, Inc.*, 431 Pa. 459, 246 A. 2d 353 (1968).

In an appropriate case, we may entertain an interlocutory appeal as an exercise of our discretion under Section 501(b) of the Appellate Court Jurisdiction Act,[3] where it involves a controlling question of law about which there is a substantial difference of opinion. Section 501(b), however, provides that "[w]hen a court . . . in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, *it shall so state in such order*. The appellate court may *thereupon*, in its discretion, permit an appeal to be taken from such order." (Emphasis supplied.) Therefore, our discretion to allow an interlocutory appeal cannot be invoked unless the lower court first certifies that its order involves such a controlling question of law. The order of February 6, 1974, on appeal in this case, contains no such statement of certification. Thus, we cannot entertain this appeal under Section 501(b). Compare *Commonwealth v. Guardiani*, 226 Pa. Superior Ct. 435, 310 A. 2d 422 (1973) (no statement of certification by lower court, appeal

---

2. Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. III, §302; 17 P.S. §211.302; *Lewandowski v. General Telephone Company*, 223 Pa. Superior Ct. 476, 302 A. 2d 478 (1973). See generally, Montgomery, *Interlocutory Appeals in Pennsylvania*, 41 Pennsylvania Bar Assoc. Quarterly 398 (1970).

3. Appellate Court Jurisdiction Act, supra, n. 2, art. V, §501(b); 17 P.S. §211.501(b).

quashed) with *Norman v. Norfolk and Western Ry. Co.*, 228 Pa. Superior Ct. 319, 322, n. 3, 323 A. 2d 850, 851, n. 3 (1973) (matter certified by lower court).

Appellant may have believed that his appeal, although interlocutory and uncertified, was properly before our Court under the terms of the Act of March 5, 1925,[4] which provides that "[w]herever in any proceeding at law or in equity the question of jurisdiction over the defendant or of the cause of action for which suit is brought is raised in the court in the first instance, it shall be preliminarily determined by the court upon the pleadings or with depositions, as the case may require; and the decision may be appealed to the Supreme Court or the Superior Court, as in cases of final judgments." This appeal does not raise such a question of jurisdiction.

It appears that insofar as appellant attempts to raise a jurisdictional question, he is attacking the subject matter jurisdiction of the Common Pleas Court of Allegheny County, rather than the jurisdiction of the court over his person. If the Common Pleas Court lacked subject matter jurisdiction over the question of paternity in an action for the support of illegitimate children under the Civil Procedural Support Law, then it would follow axiomatically that such subject matter jurisdiction could not be created by consent of the parties, *Appeal of Kramer*, 445 Pa. 238, 282 A. 2d 386 (1971), nor could the lack of such jurisdiction ever be waived, *Commonwealth v. Little*, 455 Pa. 163, 314 A. 2d 270 (1974) absent explicit statutory authority for such a waiver. Our Court has held, however, that a Common Pleas Court judge may determine a disputed issue of paternity in a Civil Procedural Support Law case if the putative father agrees to that procedure. *Commonwealth v. Jacobs*, 220 Pa. Superior Ct. 31, 279 A. 2d 251 (1971). This holding taken by itself is sufficient to demonstrate that the lower court had sub-

---

4. Act of March 5, 1925, P.L. 23, §1; 12 P.S. §672.

ject matter jurisdiction of the instant action, at least in the technical sense of "the competency of a court to hear and determine controversies of the general nature of the matter involved. . . ." *McGinley v. Scott*, 401 Pa. 310, 316, 164 A. 2d 424, 427 (1960). Thus appellant's objection does not go to subject matter jurisdiction and is not appealable under the Act of March 5, 1925.

This is not to suggest that, on the facts of record, the lower court may properly grant the complainant the relief demanded. The test of subject matter jurisdiction is "whether the court had power to enter upon the inquiry, not whether it might ultimately decide that it could not give relief in the particular case: *"Drummond v. Drummond,* 402 Pa. 534, 538, 167 A. 2d 287, 290 (1961).[5]

As the instant appeal is interlocutory, uncertified, and does not raise a question of the lower court's jurisdiction, our Court would ordinarily order that it be quashed. Nevertheless, appellee has neither filed a brief nor challenged our jurisdiction in any way. The Appellate Court Jurisdiction Act, supra, n.2, art. III, §503(a), 17 P.S. §211.503(a), provides that "[t]he failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the hearing of the appeal, or within such earlier time as may be specified by general rule or rule of court, shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction

---

5. See *Commonwealth v. Williams*, 230 Pa. Superior Ct. 72, 327 A.2d 367 (1974). (Although a defendant in Philadelphia County charged with a crime carrying a maximum prison sentence of five years or less ordinarily cannot be tried in the Common Pleas Court unless he has first either been convicted in the Municipal Court or had his case certified to the Common Pleas Court, the absence of a Municipal Court conviction or a valid certification does not deprive the Common Pleas Court of subject matter jurisdiction.)

See also *Bellotti v. Spaeder*, 433 Pa. 219, 249 A. 2d 343 (1969). (The bar of the statute of limitations does not deprive the court of subject matter jurisdiction.)

of such appellate court, notwithstanding any provision of this act, or of any general rule adopted pursuant to section 505 of this act, vesting jurisdiction of such appeal in another appellate court." We have indicated that "[o]ur appellate jurisdiction extends to *non-final* orders ... where ... the appellee has waived an objection to the jurisdiction of the court" under the above-cited section of the Appellate Court Jurisdiction Act. *Commonwealth v. Rucco*, 229 Pa. Superior Ct. 247, 249, 324 A. 2d 388, 389 (1974) (emphasis in original). In such a case, "we may, in our discretion refuse to exercise that jurisdiction." *Rucco*, at 250, 324 A. 2d at 389. See *Davidyan v. Davidyan*, 229 Pa. Superior Ct. 495, 327 A. 2d 139 (1974) (Majority exercised its discretion under §503(a), supra, to quash the appeal as interlocutory; SPAETH, J., in a dissenting opinion in which WATKINS, P.J., joined, stated that "[o]ur discretion would be better exercised by not quashing this appeal." 229 Pa. Superior Ct. at 504, 327 A. 2d at 143.) In the instant case, it appears that we should exercise our discretion to allow this appeal to be decided on its merits. The parties have had an opportunity to present testimony and argument in a hearing of record before the lower court, and the lower court has written an opinion on the substantive point which has been taken on appeal. We should not put the parties to the expense of a jury trial without first deciding whether that proceeding is proper.

As the appellee has not objected to our taking jurisdiction over this interlocutory appeal, and as an opinion on the merits at this point would facilitate the speedy determination of this action, our Court should entertain this appeal on its merits.

## II

Turning to the merits of this appeal, it appears that the lower court erred in ordering that the issue of paternity be determined in a jury trial in the Civil Division of the Court of Common Pleas.

The instant case is a link in a chain of decisions dealing with the interpretation of the 1963 amendment to the Civil Procedural Support Law, supra. As originally enacted in 1953, the section of the Civil Procedural Support Law relating to the "duty of support"[6] did not include any reference to a child born out of wedlock. The only way in which a duty to support an illegitimate child could be established was in a criminal prosecution, either for bastardy[7] or willful failure to support an illegitimate child.[8] In 1963, the support law was amended to include within the "duty of support" any duty "imposed or imposable by . . . prosecution for failure to support a child born out of lawful wedlock, or otherwise."[9] The Supreme Court, in *Commonwealth v. Dillworth*, supra, held that this section did not prevent a putative father from demanding a criminal jury trial on the issue of paternity. After *Dillworth,* our Court was faced with the problem of complainants who had erroneously commenced civil support proceedings, rather than criminal proceedings, for the benefit of illegitimate children between the time of the amendment of the Support Law and the decision in *Dillworth.* We held that a complaint under the Civil Procedural Support Law did not toll the statute of limitations on bastardy charges, and therefore dismissed criminal charges against the appellant. *Commonwealth ex rel. Kolodziejski v. Tancredi,* 222 Pa. Superior Ct. 436, 295 A. 2d 174 (1972). We reserved decision on

---

6. Act of July 13, 1953, supra, §2; former 62 P.S. §2043.32.

7. Act of June 24, 1939, P.L. 872, §506, as amended, former 18 P.S. §4506; repealed by the Act of December 6, 1972, P.L. 1482, No. 334, §5, effective June 6, 1973. Subsequent to repeal, several provisions of this act were held unconstitutional. *Commonwealth v. Staub,* 461 Pa. 486, 337 A.2d 258 (1975).

8. Act of June 24, 1939, P.L. 872, §732; former 18 P.S. §4732; superseded by the Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa. C.S. §4323, effective June 6, 1973.

9. Act of August 14, 1963, P.L. 872, §1; 62 P.S. §2043.32.

whether the complainant could be allowed to proceed under the Civil Procedural Support Law, absent a criminal finding of paternity. More recently, the *Tancredi* case came before our Court a second time and we ruled, without opinion, that the complainant could not proceed on a civil complaint where the criminal proceedings had been dismissed because of the statute of limitations. *Commonwealth ex rel. Kolodziejski v. Tancredi,* affirmed per curiam, 230 Pa. Superior Ct. 710, 326 A. 2d 532 (1974), allocatur refused January 15, 1975. Thus it appears that this Court has already indicated that a complainant should not be allowed to pursue a remedy under the Civil Procedural Support Law simply because a criminal proceeding would be barred by the statute of limitations.

The lower court in this case has attempted to create a new form of support action never contemplated by the legislature. Where the legislature has provided two specific procedures for the enforcement of the right of support for illegitimate children, the Civil Procedural Support Law and criminal proceedings for bastardy or willful failure to support an illegitimate child,[10] and where these two procedures are ringed with various special procedural requirements, it is not the job of our Court to create a new hybrid procedure for the vindication of this right. The procedure contemplated by the lower court would become, to borrow a phrase from former Judge PACKEL, "a bastard proceeding in a double sense."[11] The

---

10. A third procedure, under the Revised Uniform Reciprocal Enforcement of Support Act (1968), Act of Dec. 6, 1972, P.L. 1365, No. 291, §1 *et seq.*, 62 P.S. §2043—1 *et seq.*, need not concern us here, as it appears from the complaint that both the complainant and the appellant are resident in the same county. Revised Uniform Act, §33; 62 P.S. §2043—35. Note Revised Uniform Act §27, 62 P.S. §2043—29, dealing with the determination of paternity.

11. *Commonwealth ex rel. Kolodziejski v. Tancredi,* supra, 222 Pa. Superior Ct. at 446, 295 A. 2d at 179. (PACKEL, J., dis-

provision of such a hybrid trial will create more problems than it will solve. For example, the lower court judge ordered that proof at the trial need only be by a preponderance of the evidence; Judge PRICE, in his concurring and dissenting opinion would require proof beyond a reasonable doubt. Further questions will undoubtedly arise involving the defendant's privilege to refuse to take the witness stand, the mode of jury selection, the admissibility of evidence,[12] and the possibility of double jeopardy.[13] If such a new procedure is to be initiated, it should be by comprehensive statute or Supreme Court rule, not by our lone decision.

Assuming arguendo that we might introduce such a novel procedure in an appropriate case, this is not such a case. Appellee has delayed so long in bringing suit that one of the children for whom support has been sought will attain majority this August. Although appellant, the putative father, has not made any support payments since February, 1962, the complainant did not bring suit until June, 1967. Even after bringing suit, appellee delayed six and a half years before serving appellant with valid process.[14] Yet the applicable law, from

senting.) In this dissent, Judge PACKEL proposed a bifurcated proceeding similar to that advanced by the Majority in this case. This suggestion was apparently rejected by our Court.

12. See *Commonwealth ex rel. Lonesome v. Johnson*, 231 Pa. Superior Ct. 335, 331 A. 2d 702 (1974), which indicates that different rules of evidence may be appropriate in civil as opposed to criminal paternity cases.

13. Double jeopardy problems have troubled our Court even in the context of an ordinary bastardy proceeding. See *Riddle Appeal*, 227 Pa. Superior Ct. 68, 323 A. 2d 115 (1974).

14. The record indicates a factual conflict concerning the reasons for the delay. Complainant's attorney alleged that appellant actively evaded service of process. Appellant's attorney, on the other hand, stated that appellant had been employed continuously in the Pittsburgh area, implying that appellant could easily have been served with process had the complainant seriously at-

1939 through the present year, has required that an action for willful neglect to support an illegitimate child be brought within two years of the birth of the child, or a voluntary support payment or admission of paternity in writing by the putative father.[15] Thus, it would appear that the latest time the complainant could have commenced suit for support for the older children was February, 1964, and for the youngest, May, 1965. Thus, it appears that complainant has not even come close to meeting the requirements for a timely determination of paternity. This is not a case like *Tancredi* where the complainant, confused by the 1963 amendment to the Civil Procedural Support Law, filed a timely complaint, but proceeded under the wrong statute. This is a case where the complainant has not even attempted to come within the applicable statute of limitations and, having filed the complaint, did not prosecute the action for almost seven years. Under these circumstances, the complainant is not entitled to extraordinary relief against appellant in a proceeding newly invented by the lower court. Therefore, I would reverse the order of the court below.

SPAETH, J., joins in this opinion.

———

CONCURRING AND DISSENTING OPINION BY PRICE, J.:

The substantive issue raised in this appeal is whether

———

tempted to serve him during the six and a half years. Even if there had been no delay in service of process, complainant could not be held to have promptly commenced a proceeding for bastardy or willful nonsupport.

15. Act of June 24, 1939, P.L. 872, §732, former 18 P.S. §4732, superseded by the Act of December 6, 1972, P.L. 1482, No. 334, §1, 18 Pa. C.S. §4323(b), effective June 6, 1973. Under the repealed criminal fornication and bastardy statute, Act of June 24, 1939, supra, n. 7, §506, the action must ordinarily be commenced within two years of the date of the alleged fornication. *Commonwealth v. Dunnick*, 204 Pa. Superior Ct. 58, 202 A. 2d 542 (1964); Act of March 31, 1860, P.L. 427, §77, as amended; 19 P.S. §211.

the determination of the paternity of children born out of wedlock is governed by the Pennsylvania Civil Procedural Support Law of 1953, Act of July 13, 1953, P.L. 431, §1 (62 P.S. §2043.31) *et seq., as amended,* Act of Aug. 14, 1963, P.L. 872, §1 (62 P.S. §2043.32) *et seq.,* when paternity is disputed. The appellant, E. Edward Schmidt, contends that this determination must be made in a criminal proceeding[1] before the applicable limitations period expires.

The appeal from the order of court which certified this action to the Civil Division of the Court of Common Pleas of Allegheny County for a trial by jury on the issue of paternity purportedly raises the question of the court's jurisdiction to hear the case once the criminal statute of limitations has run. The Pennsylvania Supreme Court has stated that when the bar of the statute of limitations is raised, the issue is not one of the court's power to hear the case, but is rather an objection to the mode in which the case was brought before the court. *Bellotti v. Spaeder,* 433 Pa. 219, 249 A.2d 343 (1969). That is, an allegation that an action is barred by the statute of limitations is a procedural bar to recovery, *Goldstein v. Stadler,* 417 Pa. 589, 208 A.2d 850 (1965), but does not affect jurisdiction. Consequently, the appeal could be quashed as interlocutory. See the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. III, §302 (17 P.S. §211.302).

However, the issue presented by this appeal is of singular importance in that it involves a controlling question of law which could involve a substantial difference of opinion. Therefore, I concur in the entertaining of this appeal pursuant to this court's discretionary powers of review, as outlined in the majority opinion.

---

1. The applicable statutes in this instance are the Penal Code, Act of June 24, 1939, P.L. 872, §506 (18 P.S. §4506), *as amended;* and the Penal Code, Act of June 24, 1939, P.L. 872, §732 (18 P.S. §4732).

I cannot agree, however, with the majority's determination of the merits of this case.

The record indicates that on June 27, 1967, the appellee-mother filed a complaint for support in the Family Division of the Court of Common Pleas of Allegheny County, alleging that appellant is the father of her three children, born out of wedlock. The children were born on October 18, 1957; February 26, 1959; and May 5, 1963, respectively. Appellant, who has never been married to appellee, was first served with notice of the pendency of this action *circa* January 10, 1974, one month after appellee had filed a rule to show cause why a support order should not be entered. From the initial filing of the complaint on June 27, 1967, until the filing of the rule to show cause on December 10, 1973, appellee did not pursue the entry of the requested support order.

A hearing on the rule to show cause was held January 10, 1974. At this hearing, appellant appeared but did not testify. However, through his attorney, he denied paternity, questioned the propriety of a civil determination of the disputed paternity, and demanded a jury trial.[2] The court entered an order on February 6, 1974, denying appellant's motion to dismiss for lack of jurisdiction.[3] In addition, the court certified the case to the Civil Division of the Court of Common Pleas for a jury trial.

Judge SPARVERO, in explaining his decision to certify the case to the Civil Division for a jury determination of paternity, stated:

> "Here, the Statute of Limitations has run and the defendant has no criminal liability. The youngest of the three children is ten (10) years old. Thus, if this matter is referred to a Criminal Court, the de-

---

2. Appellant did not request a criminal trial by jury in this motion.

3. Although the lower court considered appellant's motion as one to dismiss for lack of jurisdiction, as previously noted, it is not a question of jurisdiction.

fendant may cite the Statute of Limitations as a defense. . . .

We believe that neither the Supreme nor the Superior Court intended to prohibit civil jurisdiction when the Statute of Limitations [for criminal action] has run."

I agree with Judge SPARVERO'S sentiments, and would hold that when the criminal statute of limitations has expired, a jury convened in the Civil Division[4] should be permitted to determine the issue of paternity.

The leading case in this area, *Commonwealth v. Dillworth,* 431 Pa. 479, 246 A.2d 859 (1968), holds that when a man demands a jury trial on the issue of his paternity, it must be granted, for this right may not be dispensed with unless the consent of both parties is obtained. However, *Dillworth* does not specify whether the jury trial must be conducted as a civil or criminal trial.

I do not construe *Dillworth* as mandating a jury trial on the criminal side of the Courts of Common Pleas when the only issue to be determined is the paternity of the putative father and his consequent liability to support the children. I believe that a jury trial on the civil side will sufficiently protect the interest of the putative father, as long as the prosecutrix proves *beyond a reasonable doubt* that the alleged father sired the children. If this higher burden of proof is met, the putative father may then face a suit for support under the Civil Procedural Support Law, but no criminal conviction will appear on his record. In any event, a verdict against the father

---

4. I do not intend to suggest that there is a difference in the jurisdiction of the Civil Division as opposed to the Family or Criminal Divisions of the Courts of Common Pleas. Pa. Const. art. V, §5(b). Transferring the case to the Civil Division is merely an administrative safeguard to insure that the defendant suffers no stigma as he would following a criminal trial, and to indicate that no criminal record will be made. That is, this case deals merely with the exercise of jurisdiction in the Civil Division. See Pa. Const. art. V, §17.

would have no consequence except that it would serve as a basis for imposing the obligation of support.

In a case which raised the effect of *Dillworth, Commonwealth v. Jacobs,* 220 Pa. Superior Ct. 31, 34, 279 A.2d 251, 252 (1971), the court stated:

> "We conclude that *Dillworth,* supra, does not require that all putative fathers be tried in criminal proceedings. Rather, we read that decision as a mandate to safeguard the *right* to jury trial (and the other protections afforded in criminal proceedings)."

In *Jacobs,* the defendant-father had requested a civil determination of his paternity. The court found that he had waived the rights attendant upon criminal proceedings, and a non-jury hearing was held. The court noted futher that:

> "By allowing the putative father the alternative of a civil determination, of both paternity and amount of support, the child's interest will in no way be adversely affected. Where a defendant chooses a civil determination, he will be deemed to have fully waived his jury trial rights and all other protections ancillary to criminal proceedings including the right to have guilt proven 'beyond a reasonable doubt.' " 220 Pa. Superior Ct. at 38, 279 A.2d at 254.[5]

In the present situation, it is particularly necessary that a civilly-convened jury trial be held, because the criminal statute of limitations expired several years ago. Under the majority's rationale, *i.e.,* that only a criminal adjudication of paternity will serve as the basis for an award of support, a putative father in these circumstances will never be held liable for the support of his

---

5. The same circumstance, *i.e.,* a request by the putative father for a civil determination of paternity, occurred in *Commonwealth ex rel. Lonesome v. Johnson,* 231 Pa. Superior Ct. 335, 331 A.2d 702 (1974). Therein we held that Johnson had waived his jury trial rights and affirmed the propriety of a civil hearing. I can find no such waiver in the instant case.

children. This unfortunate situation will prevail despite the fact that the Civil Procedural Support Law contains no statute of limitations, thus permitting a claim for support to be instituted at any time during the minority of the children. Clearly this result, wherein a father could never be legally required to support his children, is contrary to the intention of the legislature as evidenced by the Civil Procedural Support Law, a vehicle for obtaining such support.

I would affirm the order of the lower court and remand the case for proceedings consistent with this Opinion.

VAN DER VOORT, J., joins in this concurring and dissenting opinion.

OPINION BY JACOBS, J., DISSENTING IN PART:

This appeal was brought from the order of the court below certifying the issue of paternity for determination by the civil division of the court of common pleas in a jury trial. In my view, an appeal from such an order is interlocutory and should not be considered by this Court either as a matter within our discretion,[1] as the majority holds, or as a question of jurisdiction.[2]

In the present case, the complainant initially filed a civil complaint for support of her three children, naming appellant as defendant, in 1967. At that time the children were four, eight and ten years of age. The allegation in the complaint was that the defendant had not contributed to the support of these children for the preceding five years. A hearing was held on January 10, 1974. At the hearing, counsel for appellant entered on behalf of his

1. Act of July 31, 1970, P.L. 673, art. V, §§501(b), 503(a), 17 P.S. §§211.501(b), 211.503(a) (Supp. 1974-75).

2. Act of March 5, 1925, P.L. 23, §1, 12 P.S. §672 (1953) *as modified* Act of July 31, 1970, P.L. 673, §509(g)(30), added by Act of June 3, 1971, P.L. 118, No. 6, 17 P.S. §211.509(g)(30); and Pa.R.C.P. 1451, 1501-1550 and 1017(b)(1).

client a denial of paternity and preliminarily objected to the jurisdiction of the court to hear the paternity issue. The lower court reserved its decision on the question of jurisdiction and heard the testimony of the complainant. The defendant did not testify but through his counsel cross-examined the complainant. Subsequently, an order was entered denying the defendant-appellant's motion to dismiss for lack of jurisdiction, and granting a jury trial in the civil division of the court of common pleas to determine paternity. It was further ordered that should there be a finding of paternity, the matter would be returned to the family division to establish the amount of support. An appeal from the order was brought to this Court challenging the lower court's finding of jurisdiction and certification of the issue to the civil division.

Under the Appellate Court Jurisdiction Act, this Court has exclusive jurisdiction of appeals from final orders of the courts of common pleas which are not within the exclusive jurisdiction of the Supreme or Commonwealth Courts. Act of July 31, 1970, P.L. 673, art. III, §302, 17 P.S. §211.302 (Supp. 1974-75). If authorized by law, an appeal can be taken from an interlocutory order to an appellate court which would have jurisdiction over a final order in the same matter. Act of July 31, 1970, P.L. 673, art. V, §501(a), 17 P.S. §211.501(a) (Supp. 1974-75). The standard accepted for determining appealable orders under the Act has been stated: " 'unless a special right to appeal is expressly given by statute, an appeal will lie only from a definitive order, decree, or judgment *which finally determines the action.*' " *Brown Estate,* 446 Pa. 401, 406, 289 A.2d 77, 79 (1972) (emphasis original), *quoting from Stadler v. Mt. Oliver Borough,* 373 Pa. 316, 317-318, 95 A.2d 776 (1953). Finality of an order or judgment is found when it effectively puts a defendant "out of court," by precluding the proof of facts at trial which could provide a complete defense, *Ventura v. Skylark Motel, Inc.,* 431 Pa. 459, 246

A.2d 353 (1968), or it otherwise terminates litigation between the parties by precluding either party from further action in that court. *Marino Estate,* 440 Pa. 492, 269 A.2d 645 (1970). Since the appeal in the present case is from an order certifying the question for trial in the civil division, and the defendant-appellant is clearly not deprived of his day in court, the appeal is interlocutory and cannot be reviewed by this Court unless allowed by some express statutory authority.

The question therefore becomes whether the non-final order below falls within a specific statutory provision allowing appeals from interlocutory orders. Those members of the Court who would hear this appeal adopt the position that an appellate court can allow an appeal from an interlocutory order as a matter within its discretion. Two sections of the Appellate Court Jurisdiction Act permit an appellate court to exercise its discretion to accept an appeal. One, the Act of July 31, 1970, P.L. 673, art. V, §501(b), 17 P.S. §211.501(b) (Supp. 1974-75)[3] allows appeals from interlocutory orders when the lower court has certified the question for appeal by stating in the interlocutory order itself that a controlling question of law is involved. The order in the present case contains no such certification, but simply transfers the issue to the civil division for a jury trial. Therefore, this section does not aid the appellate court in taking jurisdiction of this case.

---

3. This Section provides as follows: "Discretionary Allowance of Appeals. When a court . . . in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is no substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such order."

An appellate court is permitted to use its discretion in accepting an appeal under another section of the Appellate Court Jurisdiction Act. This section provides: "[t]he failure of an appellee to file an objection to the jurisdiction of an appellate court on or prior to the hearing of the appeal ... shall, unless the appellate court shall otherwise order, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of this act ... vesting jurisdiction of such appeal in another appellate court." Act of July 31, 1970, P.L. 673, art. V, §503(a), 17 P.S. §211.503(a) (Supp. 1974-75). Although the appellee in the present case failed to object to our Court's jurisdiction of this appeal, it is my opinion that this section is not applicable to the present case. It appears from the wording of the section that an appellate court may accept an appeal which has not been objected to on jurisdictional grounds when the subject matter of that appeal may be within the jurisdiction of another appellate court. This section does not expressly give an appellate court the discretion to accept an interlocutory appeal absent certification from the court below. I would limit the application of the section to appeals from final orders where the question of jurisdiction between the appellate courts has not been raised, and allow an appellate court's discretionary acceptance of a properly appealable question to perfect its jurisdiction even if the appeal should have been brought to another appellate court.

Both before and after the passage of the Appellate Court Jurisdiction Act, the courts of this Commonwealth have held that the express authorization of law is required to allow an appeal from an interlocutory order. *See Brown Estate*, supra; *Philadelphia v. William Penn Business Institute*, 423 Pa. 490, 223 A.2d 850 (1966); *Weste v. Grayson-Robinson Stores, Inc.*, 417 Pa. 6, 207 A.2d 851 (1965). Even consent of the parties does not give an appellate court jurisdiction of an interlocutory

appeal absent a special right granted by statute. *Stadler v. Mt. Oliver Borough*, 373 Pa. 316, 95 A.2d 776 (1953). Statutes ordinarily recognized as permitting interlocutory appeals from non-final orders are the Act of March 5, 1925,[4] (a question of jurisdiction is appealable), and section 501(b) of the Appellate Court Jurisdiction Act[5] (Acceptance of appeal within appellate court's discretion when certified by lower court). *See Philadelphia v. William Penn Business Institute*, supra; *Commonwealth v. Guardiani*, 226 Pa. Superior Ct. 435, 310 A.2d 422 (1973).

My research does not reveal a single decision where section 503(a) of the Appellate Court Jurisdiction Act was relied upon as the basis for an appellate court's exercise of discretion to accept an interlocutory appeal. To now permit such liberty would be contrary to the intent of the Act. As has been indicated above, the Act has provided for discretionary allowance of interlocutory appeals when the question is certified by the lower court. The parties are protected against harm that might result from the delay occasioned by such interlocutory appeal by the provision in that section that "[a] petition for an allowance of an appeal under this subsection shall not stay the proceedings before the lower court . . . unless the lower court . . .or the appellate court or a judge thereof shall so order." Act of July 31, 1970, P.L. 673, art. V,

---

4. Act of March 5, 1925, P.L. 23, §1, 12 P.S. §672 (1953). This statute has been suspended in part by Pa.R.C.P. 1501-1550 and 1451; it has been repealed in part by the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, §509(g)(30), added by Act of June 3, 1971, P.L. 118, No. 6, 17 P.S. §211.509(g) (30); it is additionally suspended in part by Pa.R.C.P. 1550(19), and Pa. R.C.P. 1451, and note under Pa.R.C.P. 1017(b)(1). However, interlocutory appeals questioning jurisdiction are still appealable to this Court. *See, e.g., McCrory Corp. v. Girard Rubber Corp.*, 225 Pa. Superior Ct. 45, 307 A.2d 435 (1973) (all orders raising questions of jurisdiction are appealable to this Court as if they were final judgments.)

5. Act of July 31, 1970, P.L. 673, art. V, §501(b), 17 P.S. §211.501(b) (Supp. 1974-75).

§501(b), 17 P.S. §211.501(b) (Supp. 1974-75). It would appear at least inconsistent that acceptance of interlocutory appeals would be so narrowly confined and controlled in one section, only to be liberally permitted in another. No protection against the suspension of litigation below is provided in section 503(a). The parties could in effect consent to the appellate court's taking jurisdiction of interlocutory appeals, a practice never permitted previously,[6] by not raising objections. This practice would encourage a multiplicity of appeals from non-final orders, brought in hopes of the appellate court's acceptance of jurisdiction, thus inviting unending litigation. In my view, the general authorization provided for in section 503(a), allowing discretionary acceptance of appeals rightfully in the jurisdiction of other appellate courts, should not be stretched to allow for the discretionary acceptance of interlocutory appeals.

It is appellant's further contention that the lower court lacks the jurisdiction to determine the question of paternity in a civil hearing. A question of the jurisdiction of a lower court, which has been determined by that court, can be appealed even though it is interlocutory. Act of March 5, 1925, P.L. 23, §1, 12 P.S. §672 (1953). However, the question whether a case is to be heard by the civil division of the court of common pleas or whether it is to be decided in the criminal division in the same court is not a question of jurisdiction which can be the subject of an interlocutory appeal to this Court under the Act of March 5, 1925.

Before the 1968 amendment to the Pennsylvania Constitution, jurisdiction of disputes involving support of illegitimate children in which the putative father denied a parental relationship was in the quarter sessions court. *See Commonwealth v. Pewatts,* 200 Pa. Superior Ct. 22, 186 A.2d 408, *allocatur refused,* 200 Pa. Superior Ct. *xxix*

---

6. *See Brown Estate,* 446 Pa. 401, 289 A.2d 77 (1972); *Stadler v. Mt. Oliver Borough,* 373 Pa. 316, 95 A.2d 776 (1953).

(1962). The 1968 amendment abolished the quarter sessions court[7] and provided for a consolidated court of common pleas having unlimited original jurisdiction in all cases, except as otherwise provided by law. Pa. Const. art. V, §5. The new consolidated court of common pleas now exercises the jurisdiction that had previously been in the quarter sessions court and the other diverse lower courts.[8] Jurisdiction of the present controversy, which previously would have been in the quarter sessions court, is now properly in the court of common pleas. *Cf. Stanis v. Simpson*, 452 Pa. 57, 305 A.2d 29 (1973). Statutory provision has been made for several divisions within the court of common pleas of Allegheny County.[9] "The Court of Common Pleas of Allegheny County established by the Judiciary Article shall consist of a civil division, a criminal division, an Orphans' Court division and a family division. The present courts of oyer and terminer and general jail delivery and quarter sessions of the peace . . . are abolished and their present jurisdiction shall be exercised by the court of common pleas." Act of December 2, 1968, P.L. 1142, §2, 17 P.S. §235.2 (Supp. 1974-75).

---

7. Pa. Const. sched. art. V, §4.

8. *Id.* This section provides: "[u]ntil otherwise provided by law, the several courts of common pleas shall exercise the jurisdiction now vested in the present courts of common pleas. The courts of oyer and terminer and general jail delivery, quarter sessions of the peace, and orphans' courts are abolished and the several courts of common pleas shall also exercise the jurisdiction of these courts."

9. Separate divisions of the Allegheny Court of Common Pleas are constitutionally provided for as follows: "Until otherwise provided by law: (a) The court of common pleas shall consist of a trial division, an orphans' court division and a family court division; the courts of oyer and terminer and general jail delivery and quarter sessions of the peace, the county court, the orphans' court, and the juvenile court are abolished and their present jurisdiction shall be exercised by the court of common pleas." Pa. Const. sched. art. V, §17.

It is clear from the governing statutes and constitutional provisions that the separate divisions of the court of common pleas do not each exercise a separate jurisdiction. Rather, the single unified jurisdiction of the consolidated court of common pleas is exercised through its separate divisions. Thus, although there may be a civil or criminal division to the court, there is no separate civil court, distinct from a criminal court. In determining which division is to hear the controversy, no question of jurisdiction is involved. It has been stated that "a question of jurisdiction over the cause of action can exist, appealable under the Act of 1925, only in the relatively rare situation where *no 'side' of the court has the power and competence to entertain the action.*" *West Homestead Borough School Dist. v. Allegheny County Bd. of School Directors*, 440 Pa. 113, 118, 269 A.2d 904, 907 (1970) (emphasis original). Although the court quoted above was discussing the lack of a jurisdictional distinction between the legal and equitable sides of the court of common pleas, the analysis is comparable to the present situation. Therefore, in the instant case, where the court of common pleas does have jurisdiction of the subject matter of the cause of action, the question of which division is to exercise that jurisdiction is not a question appealable to this Court.

The appeal should be quashed as interlocutory.

WATKINS, P.J., and CERCONE, J., join in this opinion.