## Broadie v. Hall

*Roberta Broadie*, pro se.
*Alan Lee Carb*, for defendant.

KAPLAN, *J.*, July 2, 1980—This case is before the court on defendant's petition to dismiss paternity proceedings which arose from the complaint for support filed by plaintiff on behalf of her non-marital child, Oliver Broadie, born January 25, 1975.

The procedural history of this case is a key element in its adjudication. The original action at the above number was filed August 1, 1975. In re-

sponse thereto and ancillary to his contest of paternity, defendant filed a petition on August 20, 1975 requesting that all parties submit to blood tests prior to further proceedings. In addition, defendant requested a jury trial. On August 21, 1975 Judge Sparvero of this court certified the case for blood tests and eventual jury trial.

Having neither retained counsel nor taken further recorded action, plaintiff was sent a certified letter on February 27, 1976 by Judge Brosky, then Administrative Judge of the Family Division, cautioning her that failure to take some action on her pending law suit by April 1, 1976 would result in the entry of an order for compulsory non-suit.

No such order followed, but on September 23, 1976 plaintiff caused a criminal action to be filed by the Allegheny County District Attorney's Office against defendant, founded upon 18 Pa.C.S.A. §4323 (since repealed) for neglect to support a bastard child.

Some confusion existed during the consideration of this matter as to the disposition of the criminal case against defendant, but this court's independent investigation undertaken for purposes of clarification has eliminated that concern. Apparent difficulties encountered in locating defendant for preliminary hearing before the justice of the peace (now district justice) resulted in the case being forwarded to the Criminal Division where, on December 15, 1976 after argument by counsel, it was referred back to the justice of the peace for preliminary hearing. Subsequent inquiries by plaintiff herein to the justice of the peace were met with a recommendation that the action be pursued in the Family Division. Eventually, the criminal action was dismissed on the court's own motion, for over two years' inactivity, pursuant to Pa.R.J.A.

1901. However, this was not done until after this most recent action taken by plaintiff within the Family Division for determination of paternity and for support.

In his petition now before this court, defendant has cited McConnell v. Schmidt, 234 Pa. Superior Ct. 400, 339 A. 2d 578 (1975), as authority for the proposition that lapse of the time legislatively established as the statute of limitations on criminal determinations of paternity bars pursuit of a civil remedy for failure to support. The court in McConnell stipulated that the only means by which the parental duty imposed by The Pennsylvania Civil Procedural Support Law of July 13, 1953, P.L. 431, sec. 1, 62 P.S. §2043.31 et seq., could be enforced against the putative father of an illegitimate child was through a criminal prosecution for bastardy or "nonsupport of an illegitimate" following a determination of paternity ancillary thereto.

Although McConnell was overturned by the Pennsylvania Supreme Court as interlocutory in nature and therefore inappropriate for appellate review, 463 Pa. 118, 344 A. 2d 277 (1975), the statement of the law therein found new life in Com. ex rel. Yentzer v. Carpenter, 240 Pa. Superior Ct. 202, 362 A. 2d 1101 (1976). There, the court taking note of the procedural nature of McConnell's disposition, reaffirmed the substantive principle enunciated therein, holding that the sole forum appropriate for jury determination of contested paternity, absent a waiver, was a criminal action.

The court further held that ". . . a civil action cannot be maintained absent a waiver or admission *if the criminal statute of limitations has expired."* Yentzer at 207. (Emphasis supplied.) See also Com. ex rel. Kolodziejski v. Tancredi, 230 Pa. Superior

Ct. 710, 326 A. 2d 532 (1974) (allocatur refused). This follows logically since the criminal statutory remedy was the only method which existed for determination and adjudication of paternity.

A hybrid civil proceeding employing a criminal standard of proof was suggested by dissenters in McConnell, Tancredi and Yentzer, supra, but was rejected by the majority as a procedure more properly established by legislative action. The substance of that rejection was not that the obligation to support no longer bound the putative father, but that the anomalous peculiarities of the applicable law provided no other means for adjudication of disputed paternity outside the criminal context. That the underlying support obligation itself was unaffected by this procedural roadblock is evidenced by the recurring emphasis in the appellate opinions on *disputed* proceedings, with the clear implication that an admission of paternity or waiver thereof could serve as the basis for an action under the Support Law even beyond the statutory period.

This system elaborately protected the rights of the putative father, without regard for, and to the almost certain detriment of, the mother and child whose rights were afforded no comparable protection. In Matthews v. Cuff, 254 Pa. Superior Ct. 65, 385 A. 2d 526 (1978), the procedural hammerlock imposed by the Supreme and Superior Courts was tightened. In Matthews, an Allegheny County case, defendant secured a dismissal of the criminal complaint against him in accordance with Pa.R.Crim.P. 1100, the "180 Day Rule," for the Commonwealth's failure to commence trial within 180 days of the complaint. A hybrid proceeding of the type described above was then held by Judge

Brosky of this court (since elevated to the Superior Court) despite defendant's challenge to the Family Division's jurisdiction. Applying standards of proof appropriate to a criminal proceeding, the jury held in favor of the plaintiff, thus establishing paternity in the defendant and a consequent duty of child support. On appeal, the Superior Court vacated the verdict and dismissed the action, scoring the hybrid proceeding as violative of the appellate court's clear mandate prohibiting such procedure.

In passing acknowledgment of the trial court's concern for the unfortunate predicament of the mother and child, the majority agreed that it is clearly an unfortunate situation but "if more protection is required, it is a legislative matter." Matthews, supra, at 69; Com. v. Dillworth, 431 Pa. 479, 246 A. 2d 859 (1968); Com. v. Jacobs, 220 Pa. Superior Ct. 31, 279 A. 2d 251 (1971); and Com. ex rel. Yentzer v. Carpenter, supra.

The most recent appellate decision along the lines of Matthews was Com. ex rel. Czuryla v. Toscano, 264 Pa. Superior Ct. 216, 399 A. 2d 744 (1979). There, the court, in a terse per curiam opinion, dismissed the action against defendant putative father, and, again acknowledging the harshness of the result to the mother and her child, utilized the above quotation from Matthews which places the burden for remedial action squarely on the legislature.

Apparently, the Superior Court somehow neglected to consider that almost a year before the announcement of its decision in Czuryla, the General Assembly had, in fact, acted to rectify the situation so that remand consistent therewith might have been possible. The Civil Procedural Support Law, 62 P.S. §2043.31 et seq., was amended, effec-

tive June 27, 1978, to provide a civil cause of action with a six year statute of limitations and to repeal that section of the Crimes Code dealing with determinations of paternity, 18 Pa. C.S.A. §4323. See Act of April 28, 1978, P.L. 106, no. 46. However, in one of those legislative incongruities which seem to afflict our system, the amended law had already been repealed by the Judiciary Act Repealer Act (JARA) of April 28, 1978, P.L. 202, sec. 2(a) [1291], 42 P.S. §20002(a) [1291] effective June 27, 1978, and reinacted in substantially the same form as part of the Judicial Code, 42 Pa.C.S.A. §6701 et seq.

The Statutory Construction Act of 1972, 1 Pa.C.S.A. §1501 et seq., deals, in apparent anticipation of just such incongruity, with the "effect of separate amendments on code provisions enacted by the same General Assembly." 1 Pa.C.S.A. §1952. Section 1952 is made specifically applicable to all acts of the 1977-78 General Assembly ". . . insofar as relates to Title 42 of the Pennsylvania Consolidated Statutes or any other provision of law codified by this act." Section 41 of JARA, supra. The Statutory Construction Act, 1 Pa.C.S.A. §1952, states:

"Whenever any existing statute, incorporated into and repealed by a code, is also amended by other legislation enacted at the same General Assembly, such separate amendment shall be construed to be in force, notwithstanding the repeal by the code of the statute such other legislation amends, and such amendment shall be construed to prevail over the corresponding provisions of the code."

Thus, despite its curious status as an amendment to a repealed statute, the new procedure for deter-

mination of paternity is to be considered validly effective.

At this point, the issue to be resolved is whether this newly enacted means of determining paternity can be applied via its longer statute of limitations, to actions which would have been barred under the prior statute. It is the position of this court that this civil paternity statute provides a new independent *means* of securing enforcement of an existing right. Prior case law has been unequivocal on the survival of the parental support obligation beyond the criminal statutory period, subject to the unavailability of a means to prove paternity: Jacobs, supra. The courts have been equally firm in expressing their concern for the inherently inequitable effect of the former statutory strictures which bound mother and child to an unreasonable standard: Tancredi, Yentzer and Czuryla, supra.

This consideration clearly militates against the positions taken in Dettrey v. Keckler, 10 D. & C. 3d 610 (1979), and Com. ex rel. Stidfole v. Lullo, 10 D. & C. 3d 623 (1979), wherein the courts cited 1 Pa.C.S.A. § 1926 as the basis for dismissal of paternity actions barred under the prior statute. Section 1926 provides that, unless the legislature indicates clearly its intention to give retroactive effect to actions barred under prior law, they cannot be retroactive. The implication is that a revival of an action previously dead is required. As has been stated above, the action has not been dead; merely an ancillary, preliminary determination essential to its enforcement was formerly limited and is now less strictured.

Alternatively, even absent the above distinction, the reading given to the statute's time limitation in Dettrey and Stidfole would prevent its effectuation

in "all cases commenced under this section." 42 Pa.C.S.A. §6704(c). Where the child in question was already two years old (more accurately two years from conception) when the new statute went into effect, a determination of paternity would be barred pursuant to the prior law. Nothing could be further from the clearly expressed legislative intent established as the standard for retroactivity under 1 Pa.C.S.A. §1926. This construction is borne out by section 3 of Act of April 28, 1978, P.L. 106, no. 46, which, obviously, immediately follows section 2, the limitation-extending provision discussed above.

Section 3 is the repealer of 18 Pa.C.S.A. §4323, the criminal non-support statute, with its two year limitation. The repealer is limited, however to the extent "that *prosecutions already commenced* under that section on the effective date of this act shall not be affected by this repeal." (Emphasis supplied.)

Clearly then, those actions not yet filed, which may have been otherwise barred, fall under the aegis of section 2 and can be pursued in the civil context.

Parenthetically, section 3's exclusion of cases pending when the repeal went into effect raises a question as to the applicability of Pa.R.Crim.P. 1100 (i.e., the 180 day calculation) where, as here, defendant made himself unavailable for hearing.

With regard to cases such as that herein, where the action has been "commenced" but its prosecution may be restricted by technicalities (e.g., Rule 1100), this court finds the opinion of Judge Brosky, in Timms v. Potts, 127 Pitts.L.J. 145, 146 (1978), compellingly persuasive: ". . . legislative changes in the time in which the paternity of an illegitimate

child can be proven do not deprive a putative father of his right to due process of law. Defendant has no vested right in not being made a party to this action and he is still afforded the protection that he must be proven to be the father in a court of law." See In the Interest of .W.M.V., 268 N.W. 2d 781 (N.D. 1978). That protection has increased in value with the adoption of the new HLA (human leucocyte antigen) test by Allegheny County's Family Division as an aid in determining paternity. The accuracy of this test removes much of the uncertainty inherent in the previous methods and diminishes whatever inequity may exist in an extended statute of limitations.

In any event, this court would question the imposition of statutory time limits on determinations of paternity when such limits are only imposed upon non-marital children. That this is an unconstitutional deprivation of due process rights has been posited most cogently by the Florida Supreme Court in Florida, Department of Health and Rehabilitative Services on behalf of Lucinda Gillespie v. Ronald West, 6 Fam. L. Rep. 3005, 3007-08 (1980). After a comprehensive review of the applicable decisions by the U.S. Supreme Court, the Florida Court stated:

"Generally, statutes of limitations are enacted to bar stale claims which have been dormant for a number of years but which have not been enforced. The state's objective to avoid stale claims, however, is not valid justification for the discrimination it inflicts on illegitimates since their right to support is a continuing right renewing itself until the child becomes eighteen. An action to determine paternity is not a stale claim when employed as a prerequisite to an illegitimate's obtaining of con-

tinuing, recurring support. This right has never become dormant, and for the statute of limitations to act to preclude this right on the basis that it is stale is illogical.

"Furthermore, this statute bears at best a tenuous relationship to the interest it seeks to advance of ensuring the availability of adequate proof of paternity. The arbitrary determination that paternity can only be proved in four years creates an impenetrable barrier to an illegitimate child's right to seek support without considering alternatives which deal directly with the problem of proof. Although proof of paternity may become more difficult with the passage of time, this mere possibility cannot be allowed to work an unconstitutional discrimination against illegitimate children." (Citations omitted.)

Here again, the introduction of the HLA test serves to minimize the effect of the passage of time on paternity determinations by shifting the weight of the evidence (almost conclusively) to one side. See 42 Pa.C.S.A. §6136. However, our treatment of the statutory issues makes the constitutional question academic.

Taking the relevant facts into consideration, this court concludes that the formerly effective law on the subject should not be construed as limiting the remedies available to plaintiff nor as preventing an action to determine/prove paternity in defendant.

Although defendant claims that further civil action is barred in this matter in the face of the nonsuit issued by Judge Brosky, no record of same exists. Apparently no formal recorded action was taken by the court to effectuate the "threat" contained in its letter to plaintiff. The principle is implicit in Com. ex rel. Magaziner v. Magaziner, 434

Pa. 1, 253 A. 2d 263 (1969), that only disobedience of a formal process or order of court can inhere to the detriment of one party to an action. Moreover, even had such formal action been taken, it would not have been effective to bar subsequent actions within the extended statute of limitations: Safeguard Mutual Insurance Company v. Williams, 463 Pa. 567, 345 A. 2d 664 (1975), and Kulp v. Lehigh Valley Transit, 81 Pa. Superior Ct. 296 (1923).

Consistent herewith, this court enters the following order so as to effectuate the determination of paternity mandated herein.

### ORDER

And now, July 2, 1980, it is ordered, adjudged and decreed that plaintiff and defendant shall comply with the attached order scheduling blood tests for themselves and Oliver Robert Broadie, born January 25, 1975.